# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49376-2021

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, January 2024 Term |
| | ) | |
| v. | ) | Opinion filed: June 6, 2024 |
| | ) | |
| BRITIAN LEE BARR, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Samuel A. Hoagland, District Judge.

The decision of the district court is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Kimberly A. Coster argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kale D. Gans argued.

ZAHN, Justice.

Britian Lee Barr appeals from his judgment of conviction for five counts of sexual exploitation of a child. The district court sentenced Barr to five, fifteen-year fixed sentences to run consecutively, resulting in an aggregate seventy-five-year fixed sentence. The consecutive nature of the sentences was mandated by Idaho Code section 19-2520G(3). Barr argues that the mandatory consecutive sentence requirement in Idaho Code section 19-2520G(3) violates the Idaho Constitution's separation of powers provision by usurping the judiciary's authority to determine whether a sentence runs consecutively or concurrently. We hold that determining whether a sentence is to be served consecutively or concurrently is not a power reserved exclusively to the judiciary. As a result, section 19-2520G(3) does not violate the separation of powers provision of the Idaho Constitution.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

Britian Lee Barr was charged with eleven counts of sexual exploitation of a child for possessing child pornography. Barr had been previously convicted of felony possession of sexually exploitative material in 2011. On the second day of trial, Barr pleaded guilty to five counts of sexual exploitation of a child for possessing child pornography and admitted to being a repeat offender for purposes of Idaho Code section 19-2520G. In exchange for his guilty pleas, the other counts were dismissed.

Because Barr had pleaded guilty to offenses requiring sex offender registration, and because he had previously been convicted of a crime requiring sex offender registration, Barr was subject to a mandatory minimum term of confinement of fifteen years for each of the five counts to which he pleaded guilty, pursuant to Idaho Code section 19-2520G. The statute also mandated that the sentences run consecutively. The district court therefore sentenced Barr to five, fifteen-year fixed sentences to run consecutively, resulting in an aggregate seventy-five-year fixed sentence. The district court commented during sentencing that "I do think it would be possible for me to fashion a sentence that was not as severe if I had the discretion to do so, but I don't have that discretion . . . ."

Barr appealed the sentence, arguing that the district court abused its discretion by failing to perceive that it had discretion to designate indeterminate portions for the mandatory fifteen-year sentences and that it had discretion to order the sentences be served concurrently. We affirmed the decision of the district court because Barr had not preserved his arguments for appeal. *State v. Barr*, 166 Idaho 783, 787, 463 P.3d 1286, 1290 (2020). However, we also noted that "[n]othing in this opinion should be construed to limit Barr's right to challenge the legality of his sentence under I.C.R. 35(a)." *Id.* at 787 n.1, 463 P.3d at 1290 n.1.

Barr returned to the district court and filed a Rule 35(a) motion to correct an illegal sentence. Barr argued that the consecutive sentence requirement in Idaho Code section 19-2520G(3) is unconstitutional because it violates the doctrine of separation of powers by usurping the judiciary's inherent power to determine whether a sentence runs consecutively or concurrently. The district court denied the motion, concluding that the legislature is empowered to designate mandatory consecutive sentences under the plain language of Article V, section 13 of the Idaho Constitution. Barr timely appealed.

## II.  STANDARD OF REVIEW

"Issues of constitutional and statutory interpretation are questions of law and are reviewed by this Court de novo." *State v. Winkler*, 167 Idaho 527, 529, 473 P.3d 796, 798 (2020). "The party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and must overcome a strong presumption of validity." *Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 397, 522 P.3d 1132, 1155 (2023) (internal quotation marks omitted) (quoting *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 382, 299 P.3d 186, 189 (2013)). "When possible, the Court is obligated to seek an interpretation of a statute that upholds its constitutionality." *Id*. at 397–98, 522 P.3d at 1155–56 (alteration omitted) (internal quotation marks omitted) (quoting *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 869, 154 P.3d 433, 440 (2007)). "The Court's power to declare legislative action unconstitutional should be exercised only in clear cases." *Id*. at 398, 522 P.3d at 1156 (internal quotation marks omitted) (quoting *Am. Falls Reservoir Dist. No. 2*, 143 Idaho at 869, 154 P.3d at 440).

## III.  ANALYSIS

Barr's argument on appeal is that the district court erred because at common law it was exclusively the province of the court to determine whether a sentence ran consecutively or concurrently. He argues that Article V, section 13 of the Idaho Constitution expressly prohibits the legislature from depriving the judiciary of any of its powers and that Article II, section 1 of the Idaho Constitution specifically prohibits the legislature from exercising any power belonging to the judicial branch. Putting all of this together, Barr argues that Idaho Code section 19-2520G(3) violates the separation of powers doctrine of the Idaho Constitution by impermissibly encroaching on the inherent power of the judiciary to determine whether a sentence runs consecutively or concurrently. Barr cites to prior decisions of this Court as recognizing that this power is an inherent one reserved exclusively to the judiciary. He also argues that the district court erred in interpreting the Idaho Constitution because the plain meaning of the phrase "mandatory minimum sentence" as used in Article V, section 13 does not encompass designating whether a sentence be served consecutively or concurrently.

In response, the State contends that the plain meaning of the phrase "mandatory minimum sentence" necessarily includes the ability to mandate that sentences be served consecutively. In the State's view, mandating that a sentence runs consecutively establishes the "mandatory

minimum sentence" that a defendant must serve. The State also argues that, at common law, the judicial authority to impose consecutive sentences was subject to statutory limitation. Therefore, the common law did not establish that the power to designate whether a sentence be served consecutively or concurrently was one reserved exclusively to the judiciary. The State contends that, because this power was not reserved exclusively to the judiciary, section 19-2520G(3) does not violate the separation of powers provision of the Idaho Constitution.

Although we agree with Barr that the district court erred in its interpretation of Article V, section 13, we agree with the State that, at common law, both the judiciary and the legislature had the authority to designate whether criminal sentences be served concurrently or consecutively. We therefore affirm the district court under the "right result, wrong theory" doctrine.

## A. Article V, section 13 of the Idaho Constitution does not empower the legislature to mandate that criminal sentences run concurrently or consecutively.

The district court denied Barr's Rule 35(a) motion on the basis that the plain language of Article V, section 13 of the Idaho Constitution empowered the legislature to designate mandatory consecutive sentences. Specifically, the district court concluded that the effect of running a sentence concurrently or consecutively impacts the length of time a defendant is incarcerated and therefore is encompassed within the "mandatory minimum sentence" provision of Article V, section 13. We do not agree that the plain language of Article V, section 13 extends that far.

"The general rules of statutory construction apply to constitutional provisions . . . ." *Westerberg v. Andrus*, 114 Idaho 401, 403 n.2, 757 P.2d 664, 666 n.2 (1988). "[S]tatutory interpretation begins with the literal language of the statute. If the statutory language is unambiguous, we need not engage in statutory construction and are free to apply the statute's plain meaning." *Nordgaarden v. Kiebert*, 171 Idaho 883, 890, 527 P.3d 486, 493 (2023) (alteration in original) (quoting *Callies v. O'Neal*, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009)). "The fundamental object in construing constitutional provisions is to ascertain the intent of the drafters by reading the words as written, employing their natural and ordinary meaning, and construing them to fulfill the intent of the drafters." *Sweeney v. Otter*, 119 Idaho 135, 139, 804 P.2d 308, 312 (1990).

In 1978, voters ratified an amendment to Article V, section 13 of the Idaho Constitution to permit the legislature to provide mandatory minimum sentences for crimes:

> POWER OF LEGISLATURE RESPECTING COURTS. The legislature shall have
> no power to deprive the judicial department of any power or jurisdiction which

4

rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution, provided, however, that the legislature can provide mandatory minimum sentences for any crimes, and any sentence imposed shall not be less than the mandatory minimum sentence so provided. Any mandatory minimum sentence so imposed shall not be reduced.

Idaho Const. art. V, § 13 (emphasis added); *see* H.J.R. 6, 44th Leg., 2d Reg. Sess., 1978 Idaho Sess. Laws 1032–33 (ratified Nov. 7, 1978).

Following the adoption of this amendment, the Idaho Legislature passed Idaho Code section 19-2520G to provide that, "[p]ursuant to section 13, article V of the Idaho [C]onstitution, the legislature intends to provide mandatory minimum sentences for repeat offenders who have previously been found guilty of or pleaded guilty to child sexual abuse." I.C. § 19-2520G(1). The section also provides that any repeat child sex offender found guilty of a crime that requires sex offender registration "shall be sentenced to a mandatory minimum term of confinement . . . for a period of not less than fifteen (15) years . . . ." I.C. § 19-2520G(2). Subsection (3), the subsection at issue in this case, mandates that any sentences imposed under section 19-2520G run consecutively to any other sentence.  I.C. § 19-2520G(3).

We have previously held that the language of Article V, section 13 "provides a *narrow exception* for the legislature to exercise powers traditionally granted to the judicial branch: the legislature may encroach on the court's sentencing powers only with the enactment of *an express mandatory minimum sentence* pursuant to Article V, [s]ection 13." *State v. Olivas*, 158 Idaho 375, 380, 347 P.3d 1189, 1194 (2015) (emphasis added). We conclude that the language of Article V, section 13 is unambiguous. The plain meaning of the phrase "mandatory minimum sentences" includes the authority to mandate *the length* of a criminal sentence but does not include the authority to mandate *the timing* of when several criminal sentences are served.

Our interpretation of the constitutional language is also supported by the legislative history and voter materials concerning the amendment. The "Statement of Purpose" for House Joint Resolution 6, which resulted in the amendment to Article V, section 13 being placed on the ballot for voters, provided:

Legislatures in other states are able to *set mandatory minimum sentences*. Such a power goes hand in hand with the power of the Legislature to enact laws defining what shall constitute criminal acts. Since the Legislature can say what is a crime, so should it say how the crime shall be punished.

*Statement of Purpose*, H.J.R. 6, 44th Leg., 2d Reg. Sess. (Idaho 1978) (emphasis added). The ballot description for the proposed amendment to Article V, section 13 explained that the amendment would "empower the Legislature to pass criminal laws containing provisions that would require that a person convicted of a specific crime serve a *minimum period of incarceration . . . .*" Legislative Council's Statement of Meaning and Purpose, H.J.R. 6 (1978) (emphasis added), *reprinted in* The Idaho Statesman, Nov. 5, 1978, at 18. Thus, consistent with our interpretation of the plain meaning of the "mandatory minimum sentence," neither the legislative nor the ballot materials described the amendment as granting the legislature authority to mandate whether criminal sentences be served concurrently or consecutively.

The district court's contrary interpretation relied on several decisions from Idaho's appellate courts, including *State v. Alexander*, in which our Court of Appeals held that the term "sentence" includes the mandatory fines imposed as part of the sentence. *See State v. Alexander*, 138 Idaho 18, 26, 56 P.3d 780, 788 (Ct. App. 2002). We decline to extend the holding in *Alexander* to include consecutive sentences. While a mandatory fine can be part of a mandatory sentence because they are part of the punishment given for an offense, a mandatory consecutive sentence is something different. Designating whether a sentence be served concurrently or consecutively determines when a defendant begins serving each of several sentences. In contrast, a fine is part of a punishment given for an offense. Therefore, *Alexander* is inapplicable.

The district court also relied on *State v. Cardona*, 102 Idaho 668, 637 P.2d 1164 (1981). In *Cardona*, this Court held that a statute enhancing the period of incarceration for a felony committed using a firearm did not violate the separation of powers clause in our constitution because the statute was simply a sentence enhancement that rendered a person convicted of certain felonies liable to punishment in excess of that which might have been imposed had they not used or possessed a firearm in the commission of the crime. *Id.* at 670–71, 637 P.2d at 1166–67. The district court concluded that section 19-2520G(3) is also a sentencing enhancement statute because it increases the length of the offender's time incarcerated if the defendant had previously been found guilty of a crime that would require registration as a sex offender. We disagree. The statute at issue in *Cardona* did not mandate consecutive sentences, but instead was a sentence enhancement that increased the punishment for a single underlying felony. *Id.* at 670, 637 P.2d at 1166 ("[Idaho Code section] 19-2520 does not by its terms make the carrying of a firearm during a felony a separate felony nor fix a mandatory sentence for such additional crime[.]"). In contrast,

section 19-2520G(3) mandates when the sentence commences for each individual conviction. For this reason, *Cardona* is distinguishable from the circumstance here.

Finally, the district court relied on the Court of Appeals' decision in *State v. Ewell*, 147 Idaho 31, 205 P.3d 680 (Ct. App. 2009). In *Ewell*, the Court of Appeals held that Idaho Code section 19-2520G(2), requiring repeat offenders to be sentenced to a mandatory minimum of fifteen years, was constitutional. *Id.* at 36, 205 P.3d at 685. However, a close review of the *Ewell* decision reveals that its reasoning was limited to section 19–2520G(2), which mandates a minimum period of confinement of not less than fifteen years. In fact, the decision warns of the danger of referring to sentence enhancements as "consecutive" sentences, thus indicating that consecutive sentences are different than sentence enhancements. *Id*. at 37, 205 P.3d at 686 ("The term 'consecutive' is inappropriate when referring to a sentence enhancement for use of a firearm. It may connote, inaccurately, the existence of two separate sentences. (quoting *State v. Camarillo*, 116 Idaho 413, 414, 775 P.2d 1255, 1256 (Ct. App. 1989))." As discussed above, a sentence enhancement statute determines the length of a sentence imposed, while consecutive mandatory sentences determine when a sentence commences. The decision in *Ewell* is therefore inapplicable to the issue presented here.

In sum, we hold that the plain language of Article V, section 13 of the Idaho Constitution does not grant the legislature the authority to mandate whether criminal sentences be served concurrently or consecutively.

**B. Because at common law the power to mandate a consecutive sentence was not reserved exclusively to the judiciary, the consecutive sentence mandate in Idaho Code section 19-2520G(3) does not violate the separation of powers provision of the Idaho Constitution.**

We next address Barr's argument that the common law and this Court's prior caselaw establish that determining whether sentences run consecutively or concurrently is a power reserved exclusively to the judiciary. The State counters that the judiciary's common law discretion to choose between consecutive and concurrent sentences historically, including at the time of the writing of Idaho's Constitution, could be constrained by statute. Therefore, the State argues that Idaho Code section 19-2520G(3) is proper under any common law authority reflected in the Idaho Constitution.

In support of his argument, Barr relies heavily on our decision in *State v. McCoy*, where we struck down a statute establishing a mandatory sentencing scheme. 94 Idaho 236, 240–41, 486 P.2d 247, 251–52 (1971), *superseded by constitutional amendment*, Idaho Const. art. V, § 13. We

held that the judiciary possesses inherent power to suspend a sentence, and a mandatory minimum sentence interferes with this power, therefore violating the separation of powers doctrine of the Idaho Constitution. *Id.* at 240, 486 P.2d at 251. In striking down the legislature's attempt to mandate minimum sentences absent a constitutional provision, we held that, at common law, the power to sentence is "*an inherent right of the judicial department* and one which the separation of powers concept in our system of government places above and beyond the rule of mandatory action imposed by legislative fiat." *Id.* (emphasis added).

Seven years after *McCoy* was decided, Article V, section 13 was amended to grant the legislature the authority to impose mandatory minimum sentences. H.J.R. 6, 44th Leg., 2d Reg. Sess., 1978 Idaho Sess. Laws 1032–33 (ratified Nov. 7, 1978); Idaho Const. art. V, § 13; *Olivas*, 158 Idaho at 380, 347 P.3d at 1194. In *State v. Pena-Reyes*, we recognized that the amendment was in response to our decision in *McCoy* and held that the amendment effectively circumscribed the power of our trial courts to suspend a mandatory minimum sentence contained in a statute. 131 Idaho 656, 657, 962 P.2d 1040, 1041 (1998).

Barr correctly notes that we have held that our trial courts have inherent common law authority to determine whether a sentence runs consecutively or concurrently. *See State v. Lawrence*, 98 Idaho 399, 400, 565 P.2d 989, 990 (1977) ("At common law the courts had discretionary power to impose a consecutive sentence and permissive legislation was not necessary."); *see State v. Cisneros-Gonzalez*, 141 Idaho 494, 496, 112 P.3d 782, 784 (2004) ("Under the common law, the courts in Idaho have discretionary power to impose cumulative sentences."). However, we have not previously addressed whether that power is one reserved *exclusively* to the judiciary.

To answer this question, the State argues that we need look no further than *In re Esmond*, 42 F. 827 (D.S.D. 1890), a federal case involving a question of whether a territorial statute requiring the imposition of mandatory consecutive sentences gave the territorial court the authority to impose a consecutive sentence. The State asserts that the *Esmond* court's survey of nineteenth century caselaw relating to consecutive sentences shows that, in 1890, judges had the discretion to impose a consecutive sentence unless a statute provided otherwise, and therefore, establishes that the power to impose a consecutive sentence was not the sole province of the judiciary. Esmond was convicted of four counts of robbing the United States mail, and was sentenced, in the Territory of Idaho, to four consecutive terms of imprisonment of three years each. *Esmond*, 42 F. at 827.

Because there was no federal prison in the Territory of Idaho at the time, Esmond was imprisoned in South Dakota. *Id*. Esmond brought a petition for writ of habeas corpus in federal court in South Dakota, challenging the consecutive sentences as illegal and void because the territorial court in Idaho had no power to impose a consecutive sentence. *Id*.

In determining "whether cumulative sentences, in the absence of any statute, are valid," the court discussed conflicting caselaw and ultimately concluded that "the great weight of authority is in favor of the legality of consecutive sentences." *Id*. at 828–29. While *Esmond* is informative, it did not specifically address whether the authority to authorize consecutive sentences is one reserved exclusively to the judiciary.

The State also argues that evidence of the common law concerning this issue can be found in two Idaho territorial statutes that mandated consecutive sentences at the time the Idaho Constitution was adopted. *See* Idaho Rev. Stat. § 7237 (1887) (requiring consecutive sentences for convictions of multiple crimes if a sentence had not yet been pronounced for any of the crimes); Idaho Rev. Stat. § 6452 (1887) (providing that an escaped prisoner must serve their term for escaping from prison after their original sentence had been completely served). Although these statutes may be evidence of the common law, they are not the end of our analysis. *See State v. Clarke*, 165 Idaho 393, 397, 446 P.3d 451, 455 (2019).

The common law authority to impose consecutive sentences is most often traced back to the English libel case of *Rex v. Wilkes*. In that case, a writ of error was brought to the House of Lords protesting the imposition of consecutive sentences. 19 Howell's State Trials 1075, 1136, 4 Burr. 2527, 98 Eng. Rep. 327 (K.B. 1770). The House of Lords determined that the consecutive sentences imposed by the judgment of imprisonment were "good in law." *Id*. Many state courts have traced the common law authority for judges to impose consecutive sentences to this pre-Revolutionary case. *See In re Breton*, 44 A. 125, 126 (Me. 1899); *State v. Mahaney*, 62 A. 265, 265–66 (N.J. 1905); *Duquette v. Warden, N.H. State Prison*, 919 A.2d 767, 771 (N.H. 2007).

At early common law, a distinction was drawn between the imposition of punishment for misdemeanors and punishment for felonies. The punishment for misdemeanors was left to the discretion of the judge, while punishment for felonies was often mandated by statute. 2 James Fitzjames Stephen, *A History of the Criminal Law of England* 87–88 (London, MacMillan & Co. 1883). Over time, the common law evolved to grant judges sentencing discretion in felony cases as well. *Id*.

Although sentencing discretion afforded to judges increased during this time, early treatises suggest that power had always been constrained by statute. For example, early English statutes mandated that misdemeanors required the defendant to both serve jail time and pay a fine. 4 William Blackstone, *Commentaries on the Laws of England* 40 n.5, 50, 54 (London, A. Strahan 1825). Nineteenth century legal scholar Joel Prentiss Bishop, in his commentaries on criminal law, acknowledged the judge's authority to mandate consecutive sentences:

> When a prisoner, under an unexpired sentence of imprisonment, is convicted of a second offence; or when there are two or more convictions, on which sentence remains to be pronounced; the judgment may direct; that each succeeding period of imprisonment shall commence on the termination of the period next preceding.

1 Joel Prentiss Bishop, *Commentaries on the Criminal Law* 649–50 § 636 (Boston, Little, Brown & Co. 1856). However, Bishop also acknowledged that some state legislatures had begun mandating consecutive sentences:

> Yet by the common law of England, followed in most of our States, the sentence, at least in misdemeanors, may direct the imprisonment on one count or indictment to commence on the termination of that on another; and a court having the authority should give it this form. In some of the States, a *statute* declares that the periods of imprisonment shall be in this way; whereupon, it appears, there is no need for the sentence to repeat the provision, and a consolidated one will be good.

1 Joel Prentiss Bishop, *New Criminal Procedure or New Commentaries on the Law of Pleading and Evidence and the Practice in Criminal Cases* 813 § 1327 (Chicago, T. H. Flood & Co. 1895) (emphasis added). Additionally, Bishop acknowledged that statutes could constrain a judge's sentencing power:

> Yet we should here observe, that the jury does not at common law determine the sentence to be imposed; but this is left for the judge, who, *within limits prescribed by law*, exercises in the matter his discretion.

Bishop, *Commentaries on the Criminal Law*, at 647 § 632 (emphasis added).

In the late 18th and early 19th centuries, courts in the United States reached differing conclusions regarding whether judges had the inherent authority to impose consecutive sentences in felony cases absent legislation granting judges that authority. *See In re Esmond*, 42 F. at 828 (noting that "to the general question whether cumulative sentences, in the absence of any statute, are valid, I find quite a conflict of authorities"). An early decision on this issue is *Lamphere's Case*, which reached what became the minority position—that judges did not have the authority to mandate consecutive sentences in felony cases absent a statute:

[I]t has been held that consecutive sentences were valid on convictions of misdemeanors; and, inasmuch as, under the English law, the power of imprisonment for misdemeanors was largely discretionary . . . . There is, however, no authority to be found, so far as our examinations have gone, and so far as the criminal law citations are found in the best elementary books, which holds that such a practice exists at common law in *felonies*. In *Reg. v. Cutbush,* L.R. 2 Q.B. 379, it is said distinctly that a *statute was necessary to apply to felonies* the practice in misdemeanors. That case points out how the British statutes have provided for it. That is a recent, and, beyond question, a correct, statement of the law.

Whatever elasticity there may be in civil matters, it is a safe and necessary rule that criminal law should not be tampered with except by *legislation* . . . . As we have no statutes on the subject, we must, in our opinion, wait until the legislature shall see fit to devise adequate means to avoid these difficulties.

*Lamphere's Case*, 27 N.W. 882, 883–84 (Mich. 1886); *see also Bloom's Case*, 19 N.W. 200, 201 (Mich. 1884).

Despite the conclusion in *Lamphere's Case*, the majority of courts eventually came to the opposite conclusion—determining that no statute was necessary to authorize a judge to impose consecutive sentences:

As we have no statute authorizing cumulative sentences for crime, it would seem at first blush that such sentences should not be permitted in this state; but this court, with the courts of most of the other states, as well as England, has sustained cumulative sentences without the aid of a statute. . . . The great weight of authority is in favor of cumulative sentences, and they should be upheld on principle.

*Henderson v. James*, 39 N.E. 805, 805–06 (Ohio 1895); *In re Breton*, 44 A. 125, 126 (Me. 1899); *Ex parte Sargood*, 83 A. 718, 719–20 (Vt. 1912); *In re Walsh*, 55 N.W. 1075, 1076–77 (Neb. 1893); *Kite v. Commonwealth*, 52 Mass. 581, 585 (1846).

While a majority of these decisions concluded that courts had the inherent power to impose consecutive sentences, none of the decisions we reviewed concluded that the power was one exclusively reserved to the judiciary. Instead, a majority of courts acknowledged that the authority to impose a consecutive sentence could be permitted or constrained by statute. Charles Hughes, *Hughes' Criminal Law: The Law of Crimes, Prosecutions, Defenses and Procedure as Determined by Decisions of the Courts of Last Resort in the United States and England* 892 § 3340 (1901). ("Cumulative sentences in most of the states, as well as England, have been sustained without the aid of a statute."); *In re Esmond*, 42 F. at 828 ("Passing to the general question whether cumulative sentences, *in the absence of any statute*, are valid, I find quite a conflict of authorities." (emphasis added)); *Henderson*, 39 N.E. at 805–06 ("As we have *no statute* authorizing cumulative sentences

for crime, it would seem at first blush that such sentences should not be permitted in this state; but this court, with the courts of most of the other states, as well as England, has sustained cumulative sentences *without the aid of a statute*." (emphasis added)); *Lamphere's Case*, 27 N.W. at 883–84 ("[I]t is said distinctly that *a statute* was necessary to apply to felonies the practice in misdemeanors." (emphasis added)); *In re Breton*, 44 A. at 126 ("[I]t was declared that a *statute* was necessary to give the court such power in cases of felony." (emphasis added)); *Mahaney*, 62 A. at 266) ("[T]he great weight of authority in this country is that, *without any statutory provision for consecutive sentences*, the power to impose them resides in the court." (emphasis added)); *Ex parte Turner*, 45 Mo. 331, 332 (1870) ("[W]hen he is convicted and sentenced for two offenses, *the law also expressly decides when the second term shall begin . . . .*" (emphasis added)).

Barr has cited no authority holding that this power is reserved exclusively to the judiciary. Nor has our review of the common law uncovered support for his position. Rather, the majority of courts have acknowledged, sometimes expressly and other times implicitly, that the legislative branch has the authority to mandate whether sentences run consecutively. In light of the foregoing, we conclude that, while courts have the inherent power to determine whether a sentence runs consecutively or concurrently, that power is not reserved exclusively to the judiciary.

While the district court's decision was premised on its erroneous interpretation of Article V, section 13, we affirm its decision denying Barr's motion under the "right-result, wrong theory" rule. "Where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory." *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019) (quoting *Andre v. Morrow*, 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984)). The right-result, wrong-theory rule cannot "be invoked in situations where the alternative basis was not pressed before the trial court." *Id*. at 223, 443 P.3d at 237. "[B]oth the issue and the party's position on the issue must be raised before the trial court for it to be properly preserved for appeal." *Id*. at 225, 443 P.3d at 239 (quoting *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019)). A party is permitted to "fine-tune its argument" if the "the issue was properly raised below and its position on that issue had not changed." *Id*. at 224, 443 P.3d at 238 (citing *Ada Cnty. Highway Dist. v. Brooke View, Inc.*, 162 Idaho 138, 142 n.2, 395 P.3d 357, 362 n.2 (2017)).

We are satisfied that the parties adequately preserved their arguments concerning the common law below. Before the district court, Barr maintained that the authority to impose a consecutive sentence is an inherent, exclusive authority of the judiciary and therefore Idaho Code

section 19-2520G(3) violates the separation of powers provision of the Idaho Constitution. At a hearing before the district court on his Rule 35(a) motion, Barr argued that the courts have a "common law authority to run sentences consecutively and concurrently" and discussed the court's "traditional powers to decide whether the sentence is run consecutively or concurrently." In contrast, the State argued below that the legislature has the authority to mandate consecutive sentences. While the State cited additional legal authority in support of its position on appeal, citation of additional legal authority does not preclude us from affirming under the right-result, wrong-theory rule in this instance.

We therefore affirm the district court's decision denying Barr's Rule 35 motion because the power to designate whether a criminal sentence be served concurrently or consecutively is not one reserved exclusively to the judiciary at common law and therefore section 19-2520G(3) does not violate the separation of powers provisions of the Idaho Constitution.

## IV.    CONCLUSION

For the reasons discussed, we affirm the district court's denial of Barr's Rule 35(a) motion.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.

13