# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50530-2023

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, September 2025 Term |
| | ) | |
| v. | ) | Opinion filed: November 12, 2025 |
| | ) | |
| JOSE EDUARDO FIERRO-GARCIA, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Stevan H. Thompson, District Judge.

The decision of the district court is affirmed.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Brian R. Dickson argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Mark W. Olson argued.

---

ZAHN, Justice.

Jose Eduardo Fierro-Garcia appeals his judgment of conviction for possession of methamphetamine. In October 2022, just under nine months after the State filed an Information against him and roughly a week before his trial was scheduled to begin, Fierro-Garcia moved to dismiss his criminal case, arguing that his speedy trial rights under Idaho Code section 19-3501 and Article I, section 13 of the Idaho Constitution were violated. Fierro-Garcia asserted that the State failed to demonstrate good cause for the delay under section 19-3501 and that, under the Idaho Constitution, a delay exceeding six months is presumptively prejudicial. The district court denied Fierro-Garcia's motion to dismiss, concluding that there was good cause for the delay. That conclusion was based in part on a backlog of criminal cases awaiting trial due to the suspension of trials during the COVID-19 pandemic. The district court did not address Fierro-Garcia's arguments

concerning the Idaho Constitution. Fierro-Garcia entered a conditional guilty plea, reserving the right to appeal the denial of his motion to dismiss.

On appeal, Fierro-Garcia argues that the district court erred in two ways when it denied his motion to dismiss. First, he argues that an overcrowded court calendar cannot constitute good cause for trial delay. Second, he argues that the district court erred by failing to accept his argument that a delay of six months is presumptively prejudicial for purposes of the Idaho Constitution's speedy trial provision. For the reasons discussed below, we are not persuaded by either argument and affirm Fierro-Garcia's judgment of conviction.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Fierro-Garcia was arrested for possessing controlled substances on December 29, 2021, and was later released on his own recognizance. The State filed an Information on January 14, 2022, charging Fierro-Garcia with possession of heroin, methamphetamine, and drug paraphernalia. In early 2022, trials in Bingham County were suspended due to the COVID-19 pandemic. However, trials were permitted to resume in the Seventh Judicial District on February 28, 2022. Fierro-Garcia's trial was initially set to begin on May 12, 2022.

At a pretrial conference in April, the State requested a continuance because it had not received the results of forensic testing. The district court reset the trial to begin June 9, 2022. At a pretrial conference in May, the district court warned the parties that other criminal cases were scheduled for trial that same week and might take priority over Fierro-Garcia's.

On June 2, the State filed a motion to continue the trial because its forensic analyst would be on maternity leave and unavailable to testify the week of June 9. At a hearing on the motion, the State claimed that no other forensic analyst from the forensic laboratory was available to testify. Defense counsel indicated that Fierro-Garcia would object to a continuance if it pushed the trial past the statutory speedy trial deadline contained in Idaho Code section 19-3501. That code section provides that, absent good cause or a postponement at the defendant's request, a criminal case must be dismissed if trial is not held within six months of the date an information is filed. The six-month deadline to hold Fierro-Garcia's trial was July 14, 2022.

The district court granted the State's motion for a continuance. The district court indicated that there were a "number of cases that have been backed up as a result of our inability to have trials for almost 2 years, so there's still a number of trials that we're working through." According to the district court, Fierro-Garcia's case was "a relatively younger case when compared to some

2

of the other matters that have not yet been resolved" and it "would be prioritized behind other older cases." The district court concluded that the State's inability to provide another forensic analyst to testify was also "a product of the statewide backlog of trials and cases throughout the [s]tate and the limited number of forensic scientists available to testify in any of those cases that are proceeding to trial in person." The district court then confirmed that Fierro-Garcia was "not in jail" and stated that "[t]hat's another factor" and it would "make a big difference to the [c]ourt on this matter if he was, in fact, in custody."

The district court stated that trial could be reset for as early as July 7 but warned that there were "four other cases set that week," and those cases might be prioritized over Fierro-Garcia's. The district court reset the trial for July 7 but reiterated that it did not "know if this case is first on the list yet[.]" At a pretrial conference on June 22, the district court warned again that the trial might not proceed on July 7 because there were five or six trials set that week that might take priority.

Fierro-Garcia's trial did not begin on July 7. At a status conference on August 10, the district court stated that another criminal case had taken priority. The district court offered trial dates of September 22 or October 13. The State had no objection to either date. Fierro-Garcia's counsel opted for October because he was unavailable for the September date. Trial was reset for October 13.

On October 7, Fierro-Garcia moved to dismiss the case because his "original constitutional and statutory trial date of July 12, 2022, was delayed by [c]ourt order pursuant to the Idaho Supreme Court COVID-19 restrictions." He claimed that the "delay of trial on July 7, violated [his] constitutional and statutory speedy trial rights." Relevant to this appeal, Fierro-Garcia argued that, compared to the United States Constitution, the Idaho Constitution contains "heightened protections" regarding the right to a speedy trial. He argued that the Idaho Constitution is more protective in two ways: (1) a delay of six months is presumptively prejudicial under the Idaho Constitution, whereas a delay must approach one year to be considered presumptively prejudicial under the United States Constitution; and (2) delays resulting from emergency orders issued by the Idaho Supreme Court during the COVID-19 pandemic should count significantly against the State for purposes of a speedy trial analysis. The State did not file an opposition.

While his motion to dismiss was pending, Fierro-Garcia accepted a plea agreement in which he agreed to plead guilty to possession of methamphetamine, and the State agreed to

recommend probation and move to dismiss the remaining charges. The agreement permitted Fierro-Garcia to withdraw his plea if his motion to dismiss was granted and to appeal the denial of his motion to dismiss otherwise. The district court accepted Fierro-Garcia's plea in accordance with the agreement and imposed a unified sentence of four years, with one and a half years fixed, but suspended the sentence in favor of two years of probation.

Roughly a week later, the district court issued an order denying Fierro-Garcia's motion to dismiss. It concluded that the trial delay, which was just under ten months, was "not significant" and that good cause existed for the delay. As to the final continuance that pushed the trial past the statutory speedy trial deadline, the district court concluded it was unavoidable due to the backlog of cases to be set for trial that resulted from the suspension of trials during the COVID-19 pandemic and the need to accommodate another case that had been pending longer than Fierro-Garcia's:

> There was another trial set the same day with a lower case number which had to take priority over this case. There was not the senior judge availability, court reporter availability, or courtroom space to accommodate two trials proceeding on the same day in the Bingham County Courthouse and the [c]ourt had to prioritize the older case. Additionally, the [c]ourt is limited to setting jury trials in Bingham County during only one week each month as the [c]ourt is not chambered in Bingham and also maintains calendars in Lemhi, Custer, and Jefferson[] Counties which are all experiencing a similar backlog of cases ready to proceed to a trial as Bingham County following the COVID-19 limits on Jury Trials.

The district court determined that "[t]his was not a delay attributable to the State" and, while not "fully neutral," was "less prejudicial" and "more easily overcome with a justifiable reason." "Here, the need to accommodate an older case on the [c]ourt's loaded calendar is sufficient for good cause." The district court concluded that Fierro-Garcia was also not significantly prejudiced by the delay because he had not been in custody for the duration of his case, he was able to assist in his defense, and the delay did not result in lost witnesses or evidence. Fierro-Garcia thereafter filed a timely notice of appeal.

## II.    ISSUES ON APPEAL

1. Whether the district court erred by denying Fierro-Garcia's motion to dismiss for violation of his statutory speedy trial right under Idaho Code section 19-3510.

2. Whether the district court erred by denying Fierro-Garcia's motion to dismiss for violation of his speedy trial right under the Idaho Constitution.

4

## III.    STANDARDS OF REVIEW

"Whether a defendant's right to a speedy trial was infringed is a mixed question of law and fact." *State v. Mansfield*, 174 Idaho 690, 699, 559 P.3d 1177, 1186 (2024). "This Court will defer to the trial court's findings of fact if supported by substantial and competent evidence but we exercise free review over the trial court's legal conclusions." *Id.* "A trial judge does not have unbridled discretion to find good cause, however, and on appeal this Court will independently review the lower court's decision." *Id.* (citation modified) (quoting *State v. Clark*, 135 Idaho 255, 260, 16 P.3d 931, 936 (2000)). "Issues of constitutional and statutory interpretation are questions of law and are reviewed by this Court de novo." *State v. Winkler*, 167 Idaho 527, 529, 473 P.3d 796, 798 (2020).

## IV.    ANALYSIS

### A. We affirm the district court's order denying Fierro-Garcia's motion to dismiss under Idaho Code section 19-3501.

Idaho Code section 19-3501(2) requires dismissal of a prosecution when trial does not begin "within six (6) months from the date that the information is filed with the court," unless trial was "postponed upon [the defendant's] application" or there was "good cause" for the delay. I.C. § 19-3501(2). The Information charging Fierro-Garcia was filed on January 14, 2022, and Fierro-Garcia's trial did not begin within six months of that date. The district court was therefore required to grant Fierro-Garcia's motion to dismiss under Idaho Code section 19-3501 unless the delay was upon Fierro-Garcia's application or there was good cause for it. The district court determined that there was "clear good cause" for the delay in Fierro-Garcia's trial based in large part on the "backlog of cases ready to proceed to a trial . . . following the COVID-19 limits on Jury Trials" and the need to prioritize a case that was pending longer than Fierro-Garcia's.

On appeal, Fierro-Garcia argues that the district court erred because an "overcrowded court calendar" cannot constitute good cause for purposes of Idaho Code section 19-3501, "regardless of the reason why the calendar had become congested in that manner."

This Court recently rejected this argument in *State v. Mansfield*, 174 Idaho 690, 559 P.3d 1177 (2024). Like Fierro-Garcia, Mansfield appealed the denial of his motion to dismiss for violation of his statutory and constitutional speedy trial rights, arguing on appeal that the district court improperly relied on a "backlog of trials caused by the pandemic shutdown" to "excus[e] a delay due to general court congestion, which does not constitute good cause for delaying a speedy trial." *Id.* at 704, 559 P.3d at 1191. We rejected that argument, holding that, while "general court

5

congestion, in [and] of itself, is not a valid excuse for delaying a criminal trial," an overcrowded court calendar can contribute to a finding of good cause depending upon "the underlying circumstances that led to the court congestion or an overcrowded court docket . . . ." *Id*. We held that when trials are suspended for the health and safety of trial participants during a global pandemic, the unavoidable court congestion that results is good cause for trial delay. *Id.* We have since reiterated the *Mansfield* holding and held that, where trial delays were attributable to the COVID-19 pandemic, the reason for the delay was "well-defined and constitutes good cause on its face." *See State v. Sherwood*, ___ Idaho ___, ___, 571 P.3d 464, 472 (2025); *State v. Ewing*, ___ Idaho ___, ___, 572 P.3d 706, 713 (2025).

The Court's opinion in *Mansfield* was released after Fierro-Garcia filed his opening brief on appeal, but before he filed his reply brief. In his reply brief, Fierro-Garcia argues that his appeal is distinguishable from *Mansfield* because the evidence was insufficient to establish that the trial delay was attributable to the COVID-19 pandemic. In *Mansfield*, trials were suspended "for a substantial portion" of the period during which Mansfield's criminal case was pending and for the first three months of the speedy trial window. 174 Idaho at 703–04, 559 P.3d at 1190–91. In contrast, Fierro-Garcia asserts that here, of the roughly nine and a half months that his criminal case was pending, trials were only suspended for a month and a half. Fierro-Garcia also argues that the delays in his trial might have been attributable to other factors unrelated to the suspension of trials during the COVID-19 pandemic, including limitations on judicial resources, the availability of senior judges, and the fact that the district court travelled to other counties to hear cases.

We hold that there is substantial and competent evidence to support the district court's finding that good cause existed for the trial delay in this case because the delay largely resulted from the suspension of jury trials due to the COVID-19 pandemic. As a result, our holding in *Mansfield* applies with equal force here. While Fierro-Garcia is correct that trials were not suspended for the majority of the time his case was pending, that fact does not alter the conclusion that the trial delays in his case resulted from impacts associated with the COVID-19 pandemic.

The record supports the district court's findings that court congestion resulting from the suspension of trials during the COVID-19 pandemic contributed to the trial delay. The district court repeatedly warned the parties that there was a backlog of criminal cases to be set for trial and that other cases in that backlog might take priority over Fierro-Garcia's, both because they had

been pending longer and because Fierro-Garcia was not in custody. When the district court continued Fierro-Garcia's case past the six month speedy trial deadline, it stated that it had a "backlog of cases ready to proceed to a trial . . . following the COVID-19 limits on Jury Trials," and that the defendant whose trial was prioritized had an "older case on the [c]ourt's loaded calendar . . . ."

Fierro-Garcia argues that the trial delays in his case were largely unrelated to the COVID-19 pandemic and, therefore, the pandemic does not justify the trial delay here. He bases this argument on two things: (1) a statement by the district court that "there were no COVID delays in this case;" and (2) comments by the district court concerning senior judge availability, court reporter availability, courtroom availability, and the fact the court held trials in Bingham County one week each month. None of these comments contradict the district court's findings, discussed above, that the delay in Fierro-Garcia's case resulted from the suspension of jury trials during the COVID-19 pandemic.

Taking the district court's statement concerning COVID-19 delays first, a review of the full context in which the statement was made reveals that the district court simply found that Fierro-Garcia's trial was never continued as a result of an emergency order suspending jury trials due to the COVID-19 pandemic. This finding does not undermine or discount the district court's other findings that Fierro-Garcia's trial was one of many caught up in a backlog of criminal trials resulting from the suspension of jury trials due to the COVID-19 pandemic.

Turning next to the district court's comments concerning the availability of judicial resources, we again conclude that when the full context surrounding those comments is reviewed, the district court was recognizing that every county had a backlog of cases waiting to be tried as a result of the emergency orders suspending jury trials due to the COVID-19 pandemic. There is no question that the district court's efforts to resolve the jury trial backlog it confronted were impacted by the availability of judicial resources and the nature of the district court's calendar. Put differently, the district court's comments were an acknowledgement that it could only try so many cases in a given month and that every county had cases waiting to be tried. Even "working diligently to resolve the backlog of trials caused by the pandemic shutdown," resources that would otherwise be adequate to ensure trials occurred within six months may be inadequate when confronted with the unique and extraordinary circumstances resulting from the suspension of jury trials and the ensuing backlog due to the COVID-19 pandemic. *Mansfield*, 174 Idaho at 704, 559

P.3d at 1191. As a result, when viewed in the context of the entire discussion, the district court's comments concerning judicial resources simply acknowledged the district court's efforts to work its way through a backlog of jury trials that resulted from the COVID-19 pandemic.

Finally, in his reply brief, Fierro-Garcia addresses Idaho Criminal Rule 28 and the factors identified in the rule concerning whether good cause exists when ruling on a motion to dismiss based on the speedy trial requirement of section 19-3510. He argues the factors do not support a finding of good cause. The State similarly asks us to consider the factors identified in Rule 28 and clarify whether the rule abrogated caselaw predating the rule, which identified a different test for determining whether good cause existed for purposes of section 19-3510.

We decline to address these arguments because Fierro-Garcia asserted them for the first time in his reply brief. *State v. Kimbley*, 173 Idaho 149, 157, 539 P.3d 969, 977 (2023) ("[T]his Court will not consider arguments that were raised for the first time in an appellant's reply brief." (citation omitted)). Because Fierro-Garcia failed to preserve a claim of error related to Rule 28, we decline the State's invitation to address the relationship between that rule and prior caselaw concerning good cause under Idaho Code section 19-3501.

For the reasons discussed above, we affirm the district court's decision denying Fierro-Garcia's motion to dismiss under Idaho Code section 19-3501.

## B. We affirm the district court's order denying Fierro-Garcia's motion to dismiss for violation of his speedy trial rights under Article I, section 13 of the Idaho Constitution.

Fierro-Garcia also argues that the district court erred by denying his motion to dismiss for violation of his right to a speedy trial under Article I, section 13 of the Idaho Constitution. The district court did not address this issue in its decision denying Fierro-Garcia's motion to dismiss. However, Fierro-Garcia preserved the issue for appeal by raising it below and arguing the issue during the hearing on his motion. *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d 849, 853–54 (2022). We will consider the issue on appeal despite the district court's failure to address it because it concerns the interpretation of the Idaho Constitution, an issue which we consider de novo. *State v. Barr*, 174 Idaho 392, 394, 555 P.3d 1082, 1084 (2024).

Both the Sixth Amendment to the United States Constitution and Article I, section 13 of the Idaho Constitution provide that criminal defendants must receive "speedy and public" trials. U.S. Const. amend. VI; Idaho Const. art. I, § 13. In *Barker v. Wingo*, the United States Supreme Court addressed the proper inquiry when determining whether a defendant's Sixth Amendment right to speedy trial had been violated and identified four factors to be considered: "[the] [l]ength

of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. 514, 530 (1972) (footnote omitted).

"This Court has adopted this same test with respect to the speedy trial right under the Idaho Constitution." *Mansfield*, 174 Idaho at 705, 559 P.3d at 1192. The first *Barker* factor, the length of delay, "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* (quoting *Barker*, 407 U.S. at 530). "Thus, although *Barker* is framed as a four-factor framework, the first factor, the length of the delay, serves as a threshold consideration in determining whether further inquiry is required." *Id.* (quotation marks omitted) (quoting *State v. Ish*, 174 Idaho 77, 89, 551 P.3d 746, 758 (2024)). We have held that whether a delay is presumptively prejudicial "is necessarily dependent upon the peculiar circumstances of the case." *State v. Holtslander*, 102 Idaho 306, 309, 629 P.2d 702, 705 (1981) (quoting *Barker*, 407 U.S. at 530–31); *see also State v. Folk*, 151 Idaho 327, 332–33, 256 P.3d 735, 740–41 (2011) (holding that whether a delay is presumptively prejudicial depends on the circumstances of the case, including, for example, the complexity of the crime).

When assessing the first *Barker* factor, the United States Supreme Court has acknowledged that trial delays approaching a year have generally been considered presumptively prejudicial for purposes of the Sixth Amendment. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). This Court has applied a similar timeframe when assessing whether a trial delay is presumptively prejudicial for purposes of the Idaho Constitution. *See Ish*, 174 Idaho at 89–90, 551 P.3d at 758–59; *Folk*, 151 Idaho at 333, 256 P.3d at 741.

Fierro-Garcia argues that the Idaho Constitution is more protective of the right to a speedy trial than the United States Constitution. He asserts two reasons why any trial delay exceeding six months is presumptively prejudicial for purposes of Article I, section 13 of the Idaho Constitution and should trigger further inquiry. First, he argues that Article I, section 18 of the Idaho Constitution also references the right to a speedy trial, thereby indicating that Idaho accords more importance to a speedy trial than the United States Constitution, which only mentions speedy trial in one provision. Second, he contends that Idaho's territorial statutes in effect when the Idaho Constitution was adopted required a case be tried within six months, which indicates that Idaho's Constitution intended speedy trials to occur within six months.

9

"When interpreting constitutional provisions, the fundamental object is to ascertain the intent of the drafters by reading the words as written, employing their natural and ordinary meaning, and construing them to fulfill the intent of the drafters." *State v. Winkler*, 167 Idaho 527, 531, 473 P.3d 796, 800 (2020) (quotation marks omitted) (quoting *Sweeney v. Otter*, 119 Idaho 135, 139, 804 P.2d 308, 312 (1990)). "Where the constitutional provision is clear and unambiguous, the expressed intent of the drafters must be given effect." *Id.* (quotation marks omitted) (quoting *Leavitt v. Craven*, 154 Idaho 661, 667, 302 P.3d 1, 7 (2012)). "It is well-settled that when interpreting the Idaho Constitution, this Court is free to confer broader protection to Idaho citizens than that provided by the United States Constitution." *State v. Webb*, 130 Idaho 462, 467, 943 P.2d 52, 57 (1997). But "as a general matter, the federal framework is appropriate for analysis of state constitutional questions unless the state constitution, the unique nature of the state, or Idaho precedent clearly indicates that a different analysis applies." *State v. Pulizzi*, 174 Idaho 733, 737, 559 P.3d 1220, 1224 (2024) (quotation marks omitted) (quoting *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 383, 299 P.3d 186, 190 (2013)).

1. *Article I, section 18 of the Idaho Constitution*

Article I, section 18 of the Idaho Constitution provides: "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice." Idaho Const. art. I, § 18. According to Fierro-Garcia, that provision "demonstrates the Idaho Constitution should be read as more protective [of speedy trial rights for criminal defendants] than its federal counterpart" because, along with Article I, section 13, the Idaho Constitution has two provisions addressing the "speed" of proceedings in Idaho's courts. We are unconvinced that Article I, section 18 indicates an intent that it be read with Article I, section 13 to require that criminal cases should be tried within six months.

This Court has previously observed that Article I, section 18, commonly referred to as the "open courts provision," does not create any substantive rights. *Gomersall v. St. Luke's Reg'l Med. Ctr., Ltd.*, 168 Idaho 308, 316, 483 P.3d 365, 373 (2021). "Rather, Idaho's open courts provision merely admonishes Idaho courts to dispense justice and to secure citizens the rights and remedies afforded by the legislature or by the common law." *Id.* (citation modified) (quoting *Venters v. Sorrento Del., Inc.*, 141 Idaho 245, 252, 108 P.3d 392, 399 (2005)). We are not persuaded by Fierro-Garcia's argument that we should now read a substantive right into that provision. Article

I, section 18 does not itself contain any speedy trial right, much less one specifying some particular length of delay that is presumptively prejudicial.

Nor does the reference to a "speedy remedy" in Article I, section 18 suggest that Article I, section 13 should be interpreted to require that a trial delay exceeding six months is presumptively prejudicial. The two sections appear to address different issues. Article I, section 13 concerns criminal actions and directs that the accused has a right to a speedy trial. Article I, section 18 addresses Idaho's open courts and directs that citizens are entitled to a speedy remedy for the identified injuries. None of the language in Article I, section 18, including its reference to a "speedy remedy," indicates an intent to identify a specific time for the speedy trial provision in Article I, section 13.

*2. Idaho's territorial speedy trial statute*

Fierro-Garcia next argues that we should interpret Article I, section 13 to be more protective of the right to a speedy trial than the Sixth Amendment because Idaho territorial statutes required criminal cases be brought to trial within six months.

Where appropriate, this Court will look to statutes in effect when the Idaho Constitution was adopted as an aid to constitutional interpretation. "In the absence of the words of the framers, rights guaranteed by the state constitution are examined in light of the practices at common law and the statutes of Idaho when our constitution was adopted and approved by the citizens of Idaho." *State v. Clarke*, 165 Idaho 393, 397, 446 P.3d 451, 455 (2019) (quotation marks omitted) (quoting *State v. Creech*, 105 Idaho 362, 392, 670 P.2d 463, 493 (1983) (Bistline, J., dissenting)). The Court has "explained the significance of case law and statutes existing in 1889 as follows: 'Because many of the delegates to the Constitutional Convention were outstanding lawyers in their day, we generally presume that they knew and acted on such prior and contemporaneous interpretations of constitutional words which they used.'" *Id.* (quoting *Paulson v. Minidoka Cnty. Sch. Dist. No. 331*, 93 Idaho 469, 471 n.3, 463 P.2d 935, 937 n.3 (1970)). In *Clarke*, for example, the Court relied on the common law regarding misdemeanor warrantless arrests as it existed in 1889 to inform its interpretation of Article I, section 17 of the Idaho Constitution. 165 Idaho at 399, 446 P.3d at 457.

Fierro-Garcia argues that the territorial statute addressing speedy trials at the time the Idaho Constitution was adopted required trial within six months. The 1887 territorial statute was similarly worded to section 19-3510, except it provided that the defendant must be brought to trial "at the next term of court":

> The Court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
>
> . . . .
>
> 2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial at the next term of the Court in which the indictment is triable, after it is found.

Idaho Rev. Stat. § 8212(2) (Territory 1887). He claims that the requirement that the trial be brought "at the next term of the Court" implies that there was a six-month speedy trial window because Article 5, section 11 of the Idaho Constitution requires that a district court hold two terms of court per year in each county. Idaho Const. art. 5, § 11. He claims that, taken together, these provisions demonstrate that the framers of Idaho's Constitution "understood the right to a speedy trial which they included in the Idaho Constitution would be triggered once the delay exceeded six months after indictment or information was filed."

But the territorial statute did not require that trials be held within six months. If an indictment or information is filed during a term of court, the territorial statute required only that the defendant be tried at the next term of court. Nothing in either the territorial statute or Article 5, section 11 indicates when the terms must occur, how long each term must last or that the two terms must be held within six months of each other.

As such, under the territorial statute, a defendant's trial could be timely even if the defendant was charged near the beginning of a year (during a first term of court) and tried near the end of the year (during a second term of court). Depending on the timing and the length of the terms, well over six months could pass between the date the information was filed and the trial was held. *See Schrom v. Cramer*, 76 Idaho 1, 3–6, 275 P.2d 979, 980–82 (1954) (holding that, under statute requiring that a defendant be tried "at the next term of the court," where information was filed in October 1953, the defendant's trial was required to begin during the next term of court, which began in April 1954); *State v. Davidson*, 78 Idaho 553, 565, 309 P.2d 211, 219 (1957) (holding that the requirement that defendant be brought to trial "at the next term of the court" was satisfied as long as the defendant was tried "during" the next term of court).

Below, Fierro-Garcia acknowledged as much. After quoting the territorial statute and noting that Article V, section 11 requires courts to hold two terms per year, he concluded: "So, at the very least, the statutory framework in place at that time appears to have embraced an understanding that trial must be brought within the year to avoid violating the right to a speedy

12

trial." Given these considerations, we conclude that Idaho's Territorial speedy trial statute does not indicate an intent that criminal cases be brought to trial within six months.

We are not persuaded that Article I, section 13 of Idaho's Constitution indicates an intent that criminal cases be tried within six months. The analysis of Fierro-Garcia's right to speedy trial under the Idaho Constitution is therefore properly considered according to the *Barker* factors. *See State v. Lankford*, 172 Idaho 548, 560, 535 P.3d 172, 184 (2023). However, Fierro-Garcia has not argued that the *Barker* factors indicate a violation of his speedy trial right. We therefore affirm the district court's decision denying Fierro-Garcia's motion to dismiss under the Idaho Constitution.

## V. CONCLUSION

The district court's judgment of conviction is affirmed.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.