# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49742

STATE OF IDAHO, )
)
   Plaintiff-Respondent, )
)    **Boise, August 2024 Term**
v. )
)    **Opinion Filed: November 26, 2024**
DUSTIN ROBERT MANSFIELD, )
)    **Melanie Gagnepain, Clerk**
   Defendant-Appellant. )
_____ )

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Rick Carnaroli, District Judge.

The judgment of conviction is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Brian Dickson argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Mark Olson argued.

_____

BRODY, Justice**.**

Dustin Mansfield appeals from his judgment of conviction for introduction of contraband into a correctional facility. In March 2022, fourteen months after the State had filed an Information against him, Mansfield filed a plea agreement with the district court, then later filed a motion to dismiss based on an alleged violation of his statutory and constitutional rights to a speedy trial. The district court denied the motion to dismiss, concluding that the six-month period to hold a trial under Idaho Code section 19-3501(2) had not yet elapsed due to this Court's emergency COVID-19 orders that prohibited in-person trials during a significant portion of Mansfield's case. The district court also concluded that the pandemic, and this Court's emergency orders, constituted good cause for any delay, and Mansfield's right to a speedy trial under the United States and Idaho constitutions had not been violated. Mansfield subsequently entered a conditional guilty plea to one count of introduction of contraband into a correctional facility, conditioned on his ability to appeal the district court's ruling on his motion to dismiss. Mansfield timely appeals, assigning

1

error to the district court's speedy trial calculation and arguing that the COVID-19 emergency did not constitute good cause for the delay. For the reasons set forth below, we affirm Mansfield's judgment of conviction.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 6, 2021, Mansfield was formally charged with six counts of introducing contraband into a correctional facility after an inspection of his mail at the Bannock County jail, where Mansfield was incarcerated at the time on other charges, revealed suboxone strips concealed within the envelopes. About a week later, on January 14, 2021, the State filed its Information against Mansfield, as well as an Information Part II, alleging a persistent violator enhancement pursuant to Idaho Code section 19-2514 stemming from two recent felony convictions in Caribou County. Mansfield was arraigned approximately two months later in the district court and appointed counsel.

On April 2, 2021, the district court entered its initial scheduling order setting a trial date for August 3, 2021. Three days later, Mansfield filed a motion to suppress, alleging that the Bannock County jail staff had unlawfully opened his mail, and any evidence found therein should therefore be suppressed. However, Mansfield's counsel did not immediately file a notice of hearing for the motion to suppress. Mansfield's counsel did so three months later, on July 21, 2021, and the hearing was scheduled for August 25, 2021. Consequently, the August 3, 2021, trial date was vacated. The State filed its objection to the motion the day after the hearing notice was filed, and Mansfield's counsel filed a reply brief on August 25, 2021, the same day as the hearing. Thereafter, the district court continued the hearing until October 1, 2021.

At the conclusion of the October hearing, the district court denied the motion to suppress and suggested that Mansfield consider mediating with the State to reach a global resolution of multiple criminal cases that were pending against him. At that time, jury trials were paused statewide pursuant to this Court's Emergency Order Regarding Court Services, issued September 22, 2021, in response to the COVID-19 pandemic. The district court referenced the difficulty of scheduling trials given the ongoing pandemic and warned Mansfield that a jury trial may not be possible until spring 2022. The trial date was then reset to January 4, 2022.

On December 21, 2021, Mansfield sent a letter directly to the district court requesting the appointment of new counsel. He complained that his counsel had not met with him or called him back, and that he had not talked with his counsel about resolving the charges against him with the

prosecutor, as recommended by the district court during the October hearing. Mansfield expressed a lack of confidence that his counsel was the right person to conduct his trial, which at the time was two weeks away, and asked for a prompt resolution of the issue. A week later, the district court scheduled a hearing to address Mansfield's concerns and reset the trial for February 1, 2022.

At the hearing, held January 18, 2022, the district court addressed Mansfield's request for new counsel. Defense counsel explained that he had met with Mansfield at the jail "every couple weeks[,]" mediation had been scheduled for the same day as the present hearing, and counsel had cancelled that mediation in response to Mansfield's request for new counsel. The district court explained to Mansfield that, while it would appoint new counsel if Mansfield so wished, the process of obtaining new counsel would add delay to his case. Mansfield agreed to retain his counsel and participate in a re-scheduled mediation. Mansfield's trial was again rescheduled for March 1, 2022.

On February 6, 2022, Mansfield wrote a second letter to the district court, this time alleging a speedy trial violation. Mansfield's letter, which was titled "Motion For Dismissal[,]" requested the district court dismiss all charges against him because his right to a speedy trial, as guaranteed under the United States Constitution, had been violated. Mansfield acknowledged that the reason for the delay was due to the COVID-19 pandemic, but he argued that the Constitution superseded any state laws, regulations, or policy that interfered with his right. The letter was received by the district court five days later; however, as later explained by the district court, it does not read letters sent directly by defendants who are represented by counsel.

Later that February, a hearing was set for March 14, 2022, regarding a change of plea and sentencing. Mansfield's counsel filed a written plea agreement and guilty plea questionnaire with the district court on March 12, 2022. Pursuant to the plea agreement, Mansfield would plead guilty to one count of introduction of contraband into a correctional facility. In exchange for Mansfield's guilty plea, the State would dismiss the remaining charges and the persistent violator enhancement. The agreement did not reference a speedy trial violation. However, Mansfield claimed a speedy trial violation on his guilty plea questionnaire.

At the hearing regarding the change of plea and sentencing on March 14, 2022, which Mansfield did not attend, defense counsel acknowledged Mansfield's concerns regarding a possible violation of his right to a speedy trial. The district court also acknowledged the February 6, 2022, *pro se* letter attempting to raise a motion to dismiss and invited defense counsel to

3

formally file a motion on that issue. To allow Mansfield's counsel time to file the motion to dismiss and secure Mansfield's attendance, the hearing was continued until March 28, 2022; however, because defense counsel had not yet filed the motion to dismiss for a speedy trial violation, the hearing was again continued until April 18, 2022. Before adjourning the March 28, 2022, hearing, at which Mansfield was present, the district court informed Mansfield that it had conducted a speedy trial calculation for him and the six-month time limit under Idaho Code section 19-3501(2) had not run due to the time that was tolled pursuant to this Court's emergency order in response to the COVID-19 pandemic. In other words, the district court explained that, during the time it was possible to commence a trial, less than 180 days had elapsed since the Information against Mansfield was filed. The district court stated that it would conduct an additional, constitutional analysis of Mansfield's speedy trial challenge after his counsel formally filed a motion on the issue.

As the district court prepared to excuse the parties, Mansfield himself interrupted and expressed frustration that his motion to dismiss had already languished for two weeks, during which time he was waiting in jail. The district court informed Mansfield that he was not prejudiced by the delay because he was receiving credit for time served and was on his way to prison on other, unrelated charges:

> That's okay. You're getting credit for time served. You're already on your way to the penitentiary. You have nothing -- you're not being prejudiced at all other than to get procedurally everything correct, because I fully anticipate that you're going to be unhappy with this and file an appeal anyways. So procedurally we're going to do it right to protect all of your rights. Waiting two more weeks in the county jail when you're on your way to the penitentiary on your other sentences is not doing you any prejudice. You're getting credit for every day you're sitting in the county jail.

Thereafter, on March 31, 2022, Mansfield's counsel filed a motion to dismiss on speedy trial grounds under the United States and Idaho constitutions. This motion, however, did not reference Idaho Code section 19-3501. The State objected to the motion, arguing that any delay was related to and justified by the COVID-19 pandemic: "Each time a trial date was continued, the continuation was due to either the [c]ourt's priority to try incarcerated defendants or to comply with orders from the Idaho Supreme Court or Administrative District Judge postponing jury trials because of the ongoing pandemic." The State contended that "the delay from the time the Information was filed was necessary due to the conditions imposed on the courts and the citizens of Idaho to combat a worldwide pandemic."

4

At the April 18, 2022, hearing, the district court considered Mansfield's motion to dismiss. Mansfield's counsel argued that he had been incarcerated for approximately fourteen months in relation to this case, and "under the Idaho Constitution and the U.S. Constitution both, he's entitled to a speedy trial within six months." He also argued that the Idaho Supreme Court did not have the authority to issue emergency orders suspending those rights.

The district court denied the motion to dismiss. The district court first concluded that "180 days ha[ve] not elapsed in this case" in which the court was "clear to go ahead and have a jury trial" due to this Court's emergency orders in response to the COVID-19 pandemic. The district court then turned to its constitutional analysis and explained that the purpose of the speedy trial right under the United States and Idaho constitutions is to "minimize the possibility of a lengthy incarceration prior to trial, to reduce the impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest in the presence of unresolved charges." The district court noted that, regardless of this case, Mansfield was "being held no bond on probation violations. So he was going to be [incarcerated in jail] one way or another for a time." It also noted that "those probation violations were disposed of a while back and sentence imposed." The district court then referenced the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and concluded that the length of the delay, fourteen months, was not insignificant, but also concluded that the reason for delay was substantial:

> The particular circumstances are a pandemic that shut the courts down. I was no more free to impanel the jury under the prohibition of the Supreme Court order than anyone else. So the reason for the delay is substantial. It's to protect not only the defendant, the witnesses, the potential jurors, and the court staff from sitting in an overcrowded room trying to select a jury where social distancing is really near impossible, the wearing of masks likely to be of no great significance, because even the N95 masks are not good for substantial periods of time.

The district court also determined that Mansfield had not asserted his right to a speedy trial until he had sent the court his *pro se* motion to dismiss:

> I have not, until the motion came through pro se from Mr. Mansfield, received anything on the record unqualifiedly objecting to the failure to honor his right to a speedy trial. And that's significant, because I think we have Idaho case law as well as case law elsewhere that you can't just sit there and sandbag it for 181 days, and then jump up and say, "My right to speedy trial has been violated." You have to say it at the beginning or somewhere along the way that your speedy trial right's been violated. You can't just sit with it in your back pocket and do nothing with it.

5

The district court then denied Mansfield's motion to dismiss for lack of a speedy trial based on the United States and Idaho constitutions, as well as Idaho Code section 19-3501.

Immediately following the district court's oral ruling on his motion to dismiss, at the April 18, 2022, hearing, Mansfield entered a guilty plea to one count of introduction of contraband into a correctional facility, conditioned on his right to appeal the decision regarding his motion to dismiss on speedy trial grounds. The State agreed to dismiss all other charges, as well as the persistent violator sentencing enhancement, and to join Mansfield in recommending a unified five-year sentence with three years fixed, to run concurrently with the sentences imposed for Mansfield's Caribou County cases, with credit for time served. The district court followed the sentencing recommendation. Mansfield timely appealed.

## II. STANDARD OF REVIEW

Whether a defendant's right to a speedy trial was infringed is a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). This Court will defer to the trial court's findings of fact if supported by substantial and competent evidence but we exercise free review over the trial court's legal conclusions. *Id*. "A trial judge does not have unbridled discretion to find good cause, however, and on appeal [this Court] will independently review the lower court's decision." *Id*. at 260, 16 P.3d at 936.

## III. ANALYSIS

### A. Mansfield's statutory right to a speedy trial under Idaho Code section 19-3501 was not violated.

Mansfield contends the district court erred by denying his motion to dismiss due to a violation of his statutory right to a speedy trial under Idaho Code section 19-3501(2). The statute provides, in relevant part: "The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases: . . . (2) If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the Information is filed with the court." I.C. § 19-3501(2). "[G]ood cause means that there is a substantial reason that rises to the level of a legal excuse for the delay." *State v. Clark*, 135 Idaho 255, 260, 16 P.3d 931, 936 (2000). "[A] thorough analysis of the reasons for the delay represents the soundest method for determining what constitutes good cause." *Id*. Thus, in determining whether good cause exists for not bringing a defendant to trial within the six-month timeframe under Idaho Code section 19-3501(2), a court's analysis should focus upon the reason for the delay. *State v. Young*, 136 Idaho 113, 116, 29 P.3d 949, 952 (2001).

6

If the reason for the delay is well defined, and that reason on its face clearly establishes good cause, it is not necessary for a court to consider other factors in assessing whether there has been a violation of Idaho Code section 19-3501. *Clark,* 135 Idaho at 260, 16 P.3d at 936; *State v. Jacobson*, 153 Idaho 377, 380, 283 P.2d 124, 127 (Ct. App. 2012). If, however, "there are multiple reasons for the delay attributable to both the State and the defendant or the sufficiency of the reason to constitute 'good cause' is genuinely subject to disagreement," then an analysis of additional factors is appropriate. *Jacobson,* 153 Idaho at 380, 283 P.2d at 127. In that event, the court may consider: (1) the length of the delay; (2) the defendant's assertion of his right to a speedy trial; and (3) the prejudice to the defendant. *Clark*, 135 Idaho at 258–60, 16 P.3d at 934–36. In balancing these factors, "a weaker reason [for the delay] will constitute good cause" if the length of the delay was short or "the defendant has not demanded a speedy trial, or is not prejudiced" by the delay. *Id.* (citations omitted). "On the other hand, if the delay has been a long one, or if the defendant has demanded a speedy trial, or is prejudiced, a stronger reason is necessary to constitute good cause." *Id.* (citations omitted).

Mansfield contends the district court committed several errors in its statutory speedy trial analysis. He first argues the district court calculated the speedy trial window in a manner inconsistent with the plain language of the statute by starting the calculation from the wrong date and evaluating whether "180 available trial days had passed" instead of whether trial was held within the six-month time period allotted under the statute. Second, he argues the district court erred by not holding his trial within the statutory window when trials were permitted in Bannock County. We address each argument in turn.

1. *The district court erred by starting the speedy trial calculation from the wrong date; however, the error was harmless because good cause excused the delay.*

In concluding that Mansfield's statutory right to a speedy trial was not violated, the district court appeared to calculate whether 180 available trial days had passed since the date of Mansfield's arraignment:

> I'm going to walk you through this. Mr. Dustin Mansfield was -- felony [I]nformation was filed on the 14th of January, 2021. He was taken into custody -- well, actually we start from the date he was arraigned. So it looks like he was arraigned on the 29th of March of 2021. Today he's requesting this case be dismissed with prejudice based on a right to speedy trial, allegations that both state and federal constitutions as well as the statute have been violated.
>
> . . . .

7

So we've had a number of Idaho Supreme Court emergency orders, and those emergency orders have come in stops and starts. We looked at those emergency orders in conjunction with another case that we tried to count what days were actually available, where my bosses, the Idaho Supreme Court said, "You are clear to go ahead and have a jury trial." 180 days has not elapsed in this case or the other case where we reviewed those orders that have come in stops and starts. So I'm going to find to find that the defendant's right to speedy trial has not been violated because there were not 180 available trial days to this [c]ourt to try this case.

(Emphasis added.)

Section 19-3501(2) of the Idaho Code unambiguously states that the statutory window for a speedy trial calculation begins on the date the charging information was filed, not the date of the arraignment. I.C. § 19-3501(2). The Information against Mansfield was filed on January 14, 2021. Likewise, the statutory language provides that the speedy trial window is "within six-months" of the date the Information was filed. *Id*. Accordingly, under the plain language of the statute, the district court was required to dismiss the criminal charges against Mansfield unless there was good cause for not bringing him to trial within six months of January 14, 2021. *See* I.C. § 19-3501. Thus, the district court erred in starting its speedy trial calculation from the later date of Mansfield's arraignment. However, we conclude that the error is harmless because the circumstances surrounding Mansfield's case provide good cause for a delay past the statutory window.

Mansfield's case was adjudicated during the COVID-19 pandemic. In response to the pandemic and the statewide emergency declaration issued by Governor Brad Little, this Court issued a series of emergency orders restricting and/or postponing the commencement of jury trials. *See* Am. Order, *In Re: Idaho Sup. Ct. Resp. to COVID-19 Emergency* (Idaho Mar. 23, 2020); Order, *In Re: Extension of Emergency Reduction in Ct. Servs. & Limitation of Access to Ct. Facilities* (Idaho Apr. 14, 2020); Order, *In Re: Extension of Emergency Reduction in Ct. Servs. & Limitation of Access to Ct. Facilities* (Idaho Apr. 21, 2020); Order, *In Re: Emergency Reduction in Ct. Servs. & Limitation of Access to Ct. Facilities* (Idaho Apr. 22, 2020); Order, *In Re: Jury Trials* (Idaho Jul. 24, 2020). The first order, issued March 23, 2020, recognized the impact COVID-19 could have on a case's progression and included a provision addressing the statutory speedy trial calculation: "This order prohibiting the calling of juries shall be deemed good cause to deny a motion to dismiss a criminal case based upon the time requirements set forth in section 19-3501, Idaho Code." Am. Order at 1, *In Re: Idaho Sup. Ct. Resp. to COVID-19 Emergency* (Idaho Mar. 23, 2020). This order was extended multiple times. Order, *In Re: Extension of*

8

*Emergency Reduction in Ct. Servs. & Limitation of Access to Ct. Facilities* (Idaho Apr. 14, 2020); Order, *In Re: Extension of Emergency Reduction in Ct. Servs. & Limitation of Access to Ct. Facilities* (Idaho Apr. 21, 2020); Order, *In Re: Emergency Reduction in Ct. Servs. & Limitation of Access to Ct. Facilities* (Idaho Apr. 22, 2020); Order, *In Re: Jury Trials* (Idaho Jul. 24, 2020).

In September 2020, this Court issued an order permitting jury trials to resume, provided the trial court met certain safety standards; however, this order also authorized the administrative district judge in each judicial district to further suspend jury trials after considering the local rates of outbreak. Order, *In Re: Commencement of Jury Trials* (Idaho Sept. 10, 2020); Am. Order, *In Re: Jury Trials* (Idaho Sept. 16, 2020). In November 2020, this Court again issued an order postponing the commencement of trials statewide, which it renewed on December 14, 2020. Order, *In Re: Commencement of Jury Trials* (Idaho Nov. 9, 2020); Order, *In Re: Commencement of Jury Trials & Grand Jury Impanelment* (Idaho Dec. 14, 2020). Those orders had the effect of postponing the commencement of any jury trial in Idaho until March 1, 2021.

On February 3, 2021, a few weeks after the Information was filed against Mansfield, this Court issued an order permitting trials to resume, on a county-by-county basis, subject to the administrative district judge's consideration of COVID-19 incident rates within a given county. Order of Feb. 3, 2021, *In Re: Commencement of Jury Trials & Grand Jury Impanelment* (Idaho Feb. 3, 2021). In Bannock County, the suspension of jury trials was extended through March 5, 2021. Admin. Order 2021-02, *In Re: Order Prohibiting Commencement of Jury Trials in Certain Counties in the Sixth Jud. Dist. Mar. 1, 2021 – Mar. 5, 2021* (6th Jud. Dist. Feb. 19, 2021) [similar Sixth Judicial District administrative orders will be hereinafter referenced as "Sixth Jud. Dist. Admin. Order(s) ___"]. Jury trials commenced in Bannock County for the week of March 8, 2021, then were suspended again until April 19, 2021. Sixth Jud. Dist. Admin. Orders 2021-02, 2021-03, 2021-07, 2021-08, 2021-09, 2021-11, 2021-12.

Jury trials were permitted to resume in Bannock County between April 19, 2021, and August 20, 2021. On August 23, 2021, trials in Bannock County were again halted for several weeks. Sixth Jud. Distr. Admin. Orders 2021-31, 2021-32, 2021-33, 2021-34, 2021-35. On September 22, 2021, this Court again ordered the suspension of jury trials state-wide, effective September 27, 2021, through December 6, 2021. Order, *In Re: Emergency Order Regarding Ct. Servs.* (Idaho Sept. 22, 2021). In Bannock County, jury trials continued to be suspended the week of December 6, 2021, and between January 17, 2022, and February 25, 2022. Sixth Jud. Dist.

Admin. Orders 2021-38, 2022-02, 2022-03, 2022-04, 2022-05, 2022-06, 2022-07. Jury trials were permitted to resume in Bannock February 28, 2022. Sixth Jud. Dist. Admin. Order 2022-08.

From this context, it is apparent that the district court was not authorized to hold jury trials at the time the Information was filed against Mansfield due to the COVID-19 incident rates in Bannock County. Sixth Jud. Admin. Order 2021-02. Relevant to Mansfield's case, March 8, 2021, was the first date the district court was permitted to hold jury trials; however, trials were permitted for just one week, then were suspended again until April 19, 2022, after Mansfield was arraigned. The district court's statement that the emergency order "c[a]me in starts and stops" throughout Mansfield's case, and its conclusion that "there were not 180 available trial days" in Mansfield's case demonstrate that the district court considered the emergency orders prohibiting jury trials in response to the pandemic to be the reason for the delay. Mansfield makes much of the district court's statement that there were not "180 available trial days" instead of focusing on whether the case was brought to trial "within six (6) months" as the statute requires. While the district court's analysis was somewhat ambiguous on this point, we need not address this alleged error since it is clear from the record that Mansfield's trial was not held within six months of the date the Information was filed because of delays related to the COVID-19 pandemic and the emergency orders prohibiting jury trials in response to that pandemic.

We have previously held that those emergency orders constituted a justifiable reason for a delay under a constitutionally based speedy trial analysis because of the need to "protect[] the health of all trial participants during a global pandemic." *State v. Ish*, ___ Idaho___, ___, 551 P.3d 746, 759–60 (2024). For the same reason, those orders also constitute good cause for a delay in bringing a criminal defendant to trial under Idaho Code section 19-3501. Because, as we conclude below, good cause excused the delay in Mansfield's case beyond the correctly calculated six-month statutory window under Idaho Code section 19-3501, the district court's error in starting its calculation from the later date of Mansfield's arraignment is harmless.

2. *Good cause excused the delay in bringing Mansfield to trial even during the periods of his case when trials were permitted in Bannock County.*

Mansfield contends the district court erred in its good cause analysis for the delay in bringing him to trial because the COVID-19 pandemic, and the emergency orders prohibiting jury trials in response to that pandemic, fail to explain the entire delay. Mansfield raises four arguments in support of this contention: (1) the district court erroneously assumed this Court's emergency orders in response to the COVID-19 pandemic suspended the right to a speedy trial; (2) jury trials

10

were permitted in Bannock County during the last three months of his properly calculated statutory window; (3) an overcrowded court docket does not constitute good cause for a delay; and (4) the lateness of Mansfield's assertion of his right does not justify the delays. These arguments are unavailing.

We first reject Mansfield's contention that the district court based its decision to deny his motion to dismiss on an assumption that this Court suspended the right to a speedy trial. As a point of clarification, this Court's emergency orders did not suspend the right to a speedy trial; rather, the orders suspended the commencement of jury trials at various points in time in response to the COVID-19 pandemic and prescribed a method for calculating the periods for which "good cause was shown" for a delay in bringing a criminal defendant to trial during the pandemic. We have held that those orders constitute good cause for a delay in bringing Mansfield to trial within the statutory window. *Id.* Accordingly, even if the district court mistakenly construed the orders as suspending the right to a speedy trial, the district court's reliance on those orders as a reason for the delay was proper because they constituted good cause for the delay.

We now turn to Mansfield's second argument, that the emergency orders were an insufficient reason for the delay because there were no trial prohibitions in effect in Bannock County for the second half of the properly calculated statutory window. Because trials were permitted in Bannock County between the weeks of April 19, 2021, and August 23, 2021, Mansfield argues that his right to a speedy trial was violated by the State's failure to bring him to trial on or before July 14, 2021, the last date of his properly calculated statutory window. In response, the State contends that "there was no practical way" a jury trial could have been held in Mansfield's case before he pleaded guilty in April 2022, even during the periods in which Bannock County was permitted to hold trials, because of the status of Mansfield's case during those times: Mansfield's motion to suppress was pending between April 2021 and August 2021; his motion for new counsel was pending between December 2021 and January 2022; and his motion to dismiss on speedy trial grounds/change of plea was pending between February 2022 and April 2022. The State also argues that the periods of trial prohibitions, interspersed with indeterminate periods in which the prohibitions were lifted, made it unlikely that all criminal trials could be immediately scheduled or rescheduled as soon as trials were permitted. Thus, the State argues that considerations related to the COVID-19 pandemic, combined with the need to address Mansfield's

11

pending motions before trial, constituted good cause for the entirety of the delay in Mansfield's case.

Before addressing the merits of these arguments, we first address whether the State has preserved its responsive argument for appeal. Mansfield argues that the State did not preserve its argument because the State did not argue to the district court below, in response to Mansfield's motion to dismiss, that any delay in bringing Mansfield to trial was attributable to Mansfield's own actions. Rather, Mansfield emphasizes that the State's argument before the district court focused on the pandemic and this Court's emergency orders as good cause for any delay.

To preserve an issue for appeal, "both the issue and the party's position on the issue must be raised before the trial court." *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). A party may not "raise new substantive issues on appeal or adopt a new position on an issue that the trial court has not had the opportunity to rule on." *Id*. at 98, 439 P.3d at 1270. While a party may not raise a new issue or shift its position on the issue on appeal, a party may evolve its position on appeal with additional arguments and authorities. *Id*. at 97–99, 439 P.3d at 1269–71 (comparing *State v. Garcia-Rodriguez*, 162 Idaho 271, 274, 396 P.3d 700, 703 (2017) with *Ada Cnty. Highway Dist. v. Brooke View, Inc*., 162 Idaho 138, 142 n.2, 395 P.3d 357, 361 n.2 (2017).

To determine whether the State's argument was preserved, we evaluate the parties' arguments made before the district court in relation to Mansfield's motion to dismiss. Mansfield's motion to dismiss did not expressly include an alleged violation of his *statutory* right to a speedy trial; it focused on his constitutional rights. Mansfield's sole argument before the district court on this issue was that, under the United States and Idaho constitutions, he was entitled to a speedy trial within six months and the Idaho Supreme Court "did[ not] have the authority to suspend speedy trial rights." By invoking the six-month time period, the district court understood that Mansfield had alleged "that both state and federal constitutions as well as the statute have been violated." Nevertheless, Mansfield did not argue below that the district court should have held his trial during the periods in which jury trials were permitted in Bannock County, and he did not object to the scheduling of his trial on any of the dates on which it was set: the original date of August 3, 2021, or the rescheduled dates of January 4, 2022, or March 1, 2022. Thus, while Mansfield's position has always been that his speedy trial rights were violated by the failure to hold his trial within six-months of the filing of the Information against him, his argument on appeal has evolved to include the new, specific argument that the district court should have held his trial

12

during the time periods in which Bannock County was permitted to hold trials under this Court's or the Sixth Judicial District's orders.

Likewise, the State's responsive argument on appeal has also evolved. In its objection to Mansfield's motion to dismiss, the State argued that the delays in Mansfield's case were necessary due to the COVID-19 pandemic and the restrictions posed on the district court by this Court's and the Sixth Judicial District's administrative district judge's orders postponing jury trials. The State did not present any argument regarding the practicality of holding Mansfield's trial during the time periods when trials were permitted in Bannock County because Mansfield had not yet raised that precise argument. Nevertheless, the State's position has always been that good cause excused the entire delay due to considerations related to the COVID-19 pandemic. The State's responsive argument on appeal is therefore an evolved argument in support of this same position, with the presentation of additional facts, to specifically target Mansfield's evolved argument on appeal regarding this same issue. Accordingly, we conclude that the State's arguments are preserved.

Turning to the merits of Mansfield's and the State's arguments regarding the practicality of holding his trial between April 18, 2021, and July 14, 2021, we agree with the State. Had Mansfield's trial taken place on or before July 14, 2021, the district court could not have considered his motion to suppress because Mansfield's counsel did not notice that motion for a hearing until July 21, 2021, did not reply to the State's objection to that motion until August 25, 2021, and sought to continue the hearing on the motion to October 1, 2021. In addition, trials that had originally been scheduled during periods of prohibition per this Court's or the Sixth Judicial District's orders had to be rescheduled for times in which trials were permitted. *See* Order, *In Re: Commencement of Jury Trials* (Idaho Nov. 9, 2020). The district court was then required to prioritize the rescheduling of incarcerated defendants' trials. Although Mansfield was an incarcerated defendant, he was also being held without bond on other probation violations and was subsequently sentenced to prison on other charges arising out of Caribou County. Therefore, he would have been incarcerated during the statutory speedy trial window regardless of this case. Accordingly, given the district court's need to reschedule many trials in light of the earlier prohibitions and the status of Mansfield's case with his pending motions, there was no practical way the district court could have held Mansfield's trial during the time periods in which it was permitted to hold jury trials.

13

Mansfield's third argument, that an overcrowded court docket, even caused by emergency orders prohibiting jury trials, does not constitute good cause for the delay is unavailing for similar reasons. Mansfield contends that the district court's statement that it was "working diligently to resolve the backlog of trials caused by the pandemic shutdown" is equivalent to excusing a delay due to general court congestion, which does not constitute good cause for delaying a speedy trial. In support of this contention, Mansfield cites to *State v. Clark*, 135 Idaho 255, 261, 16 P.3d 931, 937 (2000) (holding that "court congestion" is a "neutral factor" in determining the reason for delay that does not override a defendant's right to a speedy trial). But given the unique circumstances of this case, Mansfield's reliance on *Clark* is misplaced.

The reason for the delay in this case was a global pandemic, not general court congestion. *Clark* did not involve a global pandemic or a concern for the health and safety of trial participants, and there were no orders prohibiting trials that would later result in unavoidable court congestion. *See generall*y *id*. at 256-57, 16 P.3d at 932-33. Indeed, there was no underlying explanation for the court congestion in *Clark* at all. *Id*. While we agree with our prior holding in *Clark* that general court congestion, in of itself, is not a valid excuse for delaying a criminal trial, we emphasize today that *Clark* does not stand for the proposition that a court must disregard the underlying circumstances that led to the court congestion or an overcrowded court docket and unilaterally dismiss all cases where a trial was not held within the six-month statutory window of Idaho Code section 19-3501. The prohibition of jury trials in response to a public health crisis and the statewide emergency declaration by the Governor, as occurred in this case, is good cause on its face for a delay in bringing a defendant to trial.

Because we conclude that the emergency orders prohibiting jury trials in response to the COVID-19 pandemic, which were in effect in Bannock County for a substantial portion of Mansfield's case, constituted good cause for the delay in bringing Mansfield to trial within the statutory window prescribed by Idaho Code section 19-3501, we do not reach the merits of Mansfield's argument regarding the timing of his assertion of his speedy trial right. *See Clark*, 135 Idaho at 260, 16 P.3d at 936; *see also State v. Jacobson*, 153 Idaho 377, 380, 283 P.3d 124, 127 (Ct. App. 2012) ("[W]here the reason for the delay is well defined and that reason on its face clearly does, or does not, constitute good cause, there is no occasion to consider the other factors in assessing a violation of Idaho Code. § 19-3501.").

14

In sum, good cause excused the delay in bringing Mansfield to trial. Accordingly, Mansfield's right to a speedy trial under Idaho Code section 19-3501 was not violated.

**B.     Mansfield's constitutional rights to a speedy trial were not violated.**

In addition to Mansfield's statutory claim, he also contends the district court erred in concluding that his right to a speedy trial, under both the United States and Idaho constitutions, was not violated. In support of this contention, he raises four main arguments: (1) the district court used the wrong date to calculate the length of the delay; (2) the district court's reasons for the delay did not constitute a strong justification for failing to conduct Mansfield's trial earlier; (3) although the district court did not evaluate the lateness of Mansfield's assertion of his right in its constitutional analysis, this Court should not weigh that fact against him; and (4) the district court failed to consider how Mansfield was prejudiced by the delay.

The United States and Idaho constitutions both guarantee, to a criminal defendant, the right to a speedy trial. U.S. Const.. amend. VI; Idaho Const. art. 1, § 13. The United States Supreme Court has provided a four-prong test, known as the *Barker* factors, for evaluating whether the federal right has been violated. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). This test includes the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's invocation of the right; and (4) prejudice to the defendant. *Id*. This Court has adopted this same test with respect to the speedy trial right under the Idaho Constitution. *Clark*, 135 Idaho at 258; 16 P.3d at 934. "[N]one of the four factors identified above [are] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 470 U.S. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. Each factor is examined in turn.

1.   *Length of the delay*

Mansfield contends the district court used the wrong date in calculating the length of the delay by starting the speedy trial calculation at the date of his arraignment. He emphasizes that the correct date to start his constitutional speedy trial calculation was no later than January 6, 2021, when formal charges were filed against him. Mansfield asserts that the amount of time that elapsed in his case was fourteen months.

Mansfield is correct that the proper date for starting a constitutional speedy trial calculation is the date formal charges are filed, or the date the defendant was arrested, whichever comes first. *State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001). The district court recognized that

15

fourteen months had passed in Mansfield's case, but reduced that calculation by starting from the date of Mansfield's arraignment:

> To determine whether his speedy trial is violated under both the state and federal constitutions, we have to use a balancing test. It's stated in the case of Barker v. Wingo. The factors I have to look at are the length of the delay, the reason for the delay, the assertion of the right to a speedy trial…and, number four, the prejudice occasioned by the delay.
>
> Well, in terms of the length of the delay, it *certainly is not insignificant that 14 months have come and gone* since arraignment. Actually, *it's 12 months since arraignment. We're a little bit over 12*.

(Emphasis added). Although the district court erred in utilizing the date of the arraignment instead of the date Mansfield was arrested or the Information was filed, the district court still recognized that a significant amount of time had passed in Mansfield's case. Prior to this oral ruling, the district court had previously noted that Mansfield had "been sitting in jail for a heck of a long time" on the charges. Mansfield and his defense attorney had also alerted the court, just minutes before its oral ruling, that he had been incarcerated for fourteen months in relation to this case. The district court then continued to discuss the reason for the delay, after having previously discussed Mansfield's assertion of his right and resulting prejudice.

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Thus, "although *Barker* is framed as a four-factor framework, the first factor, the length of the delay, 'serves as a threshold consideration in determining whether further inquiry is required.' " *State v. Ish*, ___ Idaho ___, ___, 551 P.3d 746, 758 (2024) (quoting *State v. Lankford*, 172 Idaho 548, 560, 535 P.3d 172, 184 (2023)). This Court has held that a delay of fourteen months is presumptively prejudicial. *State v. Lindsay*, 96 Idaho 474, 476, 531 P.2d 236, 238 (1975).

Consistent with *Lindsay*, the fourteen-month delay in Mansfield's case was presumptively prejudicial and triggers further inquiry into the remaining three *Barker* factors. Because the district court reached the same conclusion by noting the length of the delay was significant and conducting further inquiry into the remaining *Barker* factors, its reference to a twelve-month delay is ultimately inconsequential.

2. *Reason for the delay*

Mansfield contends the district court's reasoning on the second prong of the *Barker* analysis, the reason for the delay, was flawed because any considerations related to the COVID-

16

19 pandemic did not "constitute[] a strong justification for the delay[.]" He asserts that the district court's explanation of the reason for the delay was this Court's orders, which he argues had the effect of suspending the right to a speedy trial due to the pandemic, and the fact that courts "were working through the resulting backlog of cases." Mansfield contends that neither of those reasons is sufficient under a *Barker* analysis, and he presents four arguments in support of this contention: (1) the Idaho Supreme Court did not have the authority to issue emergency orders that resulted in a suspension of the constitutional right to a speedy trial; (2) any pandemic considerations should have been weighed against the State; (3) this Court's orders prohibiting jury trials in response to the COVID-19 were not a strong justification for the delay in Mansfield's case because there were no shutdown orders in effect for a significant portion of his case; and (4) an overcrowded court docket is not a justification for a delay in bringing in a criminal defendant to trial. Each argument is addressed in turn.

        a. <u>This Court's emergency orders in response to the COVID-19 pandemic did not suspend the constitutional right to a speedy trial.</u>

Mansfield contends the district court misapplied this Court's emergency orders in response to the COVID-19 pandemic to unilaterally suspend the constitutional right to a speedy trial. He argues that this Court has no authority to suspend a constitutional right, even in a time of emergency. In support of this argument, he cites to the United States Supreme Court decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 594 U.S. 14, 19 (2020) (per curiam) ("[E]ven in a pandemic, the Constitution cannot be put away and forgotten."). However, this Court's emergency orders did not suspend the constitutional right to a speedy trial, and Mansfield's citation *to Roman Catholic Diocese* is inapposite here.

This Court's emergency orders in response to the COVID-19 pandemic did not suspend the constitutional right to a speedy trial. There is no specific timeline for which a trial must be held under the Sixth Amendment to the United States Constitution:

> It is, for example, impossible to determine with precision when the right [to a speedy trial] has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial. . . .
>
> The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.

*Barker*, 407 U.S. at 521–22. (internal quotation marks, citation, and footnote omitted). For this reason, courts weigh the *Barker* factors, which include consideration of the reason for the delay, to determine whether the circumstances of a particular case give rise to a speedy trial violation.

We have previously held that this Court's emergency orders prohibiting trials at various points throughout the COVID-19 pandemic provided a justifiable reason for a delay in bringing a criminal defendant to trial during the pandemic. *Ish*, ___ Idaho at ___, 551 P.3d at 759-60. Likewise, we have previously concluded that Justice Gorsuch's concurring statement in *Roman Catholic Diocese of Brooklyn v. Cuomo*, does not negate the validity of those orders in a speedy trial analysis. *See id.* (holding that "delays attributable to this Court's emergency orders" were justified because "there were dire circumstances presenting 'a more pressing public need': protecting the health of all trial participants during a global pandemic." (quoting *Barker*, 407 U.S. at 537 (White, J., concurring))). Accordingly, the district court did not err in considering this Court's emergency orders as a reason for delay in his trial.

> b. The emergency orders constituted a valid reason for the delay that do not weigh against the State.

Mansfield argues that, to the extent it was proper for the district court to consider pandemic-related concerns as part of a reason for the delay, the district court erred by weighing those considerations heavily against dismissal. He cites *Barker*, 407 U.S. at 531, for the proposition that this Court's emergency orders prohibiting jury trials are a neutral reason that should nevertheless be weighed against the State. We disagree.

Under the second prong of the *Barker* factors, the relevant question is which party, if any, is more to blame for the delay? *Doggett v. United States*, 505 U.S. 647, 651 (1992). If neither party is to blame for the delay, the reason may be considered neutral. *Barker*, 407 U.S. at 531 (listing negligence or overcrowded courts as neutral reasons, which "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant"). Still other reasons for the delay that cannot be attributed to either the government or the defendant may simply be a valid justification for an appropriate delay. *Id.* ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").

Consistent with our holding in *Ish*, we conclude that this Court's and the Sixth Judicial District's emergency orders prohibiting jury trials in response to the COVID-19 pandemic presented a valid justification for appropriate delay. This conclusion is consistent with numerous other courts that have evaluated the impact of COVID-19 restrictions in other jurisdictions. *See*

18

*United States v. Pair*, 522 F. Supp. 3d 185 (E.D. Va. 2021) ("[T]he COVID-19 pandemic [is a] valid reason for delay that weigh[s] in favor of a finding that the Sixth Amendment right here at issue has not been violated."), *aff'd*, 84 F.4th 577 (4th Cir. 2023); *Elias v. Superior Ct. of San Diego Cnty.*, 294 Cal. Rptr. 3d 178, 190-91 (Cal. Ct. App 2022) (continuances related to the COVID-19 pandemic constituted valid reasons for the delay); *State v. Paige*, 977 N.W.2d 829, 838 (Minn. 2022) ("[T]rial delays due to the statewide orders issued in response to the COVID-19 global pandemic do not weigh against the State."); *Ali v. Commonwealth*, 872 S.E. 2d 662, 676 (Va. Ct. App. 2022) (COVID-19 related reasons for the delay were "valid, unavoidable, and outside the Commonwealth's control.").;

c. The lack of emergency orders in Bannock County for portions of Mansfield's case does not undermine the district court's decision to weigh the reason for the delay heavily against dismissal.

Mansfield next argues the district court erred in using the COVID-19 pandemic, or this Court's emergency orders, as a reason for the delay in bringing him to trial because there were no emergency orders in effect in Bannock County for portions of his case. Much of this argument is a repetition of the argument he made in support of his claim of a statutory violation, and we reach a similar conclusion here. The delays in bringing Mansfield to trial during periods in which there were no trial prohibitions in Bannock County cannot be attributed to the State.

Over half of the delays in Mansfield's case—241 days or approximately eight months—were attributable to the emergency orders suspending trials. Again, we conclude that these delays are justifiable and not attributable to the State. Approximately half of the delays, accounting for approximately six-and-a-half months, were attributable to Mansfield's motions and Mansfield's counsel's actions or inactions in filing motions and scheduling them for a hearing. Delays caused by defense counsel's failure to move the case forward do not weigh against the State. *Vermont v. Brillon*, 556 U.S. 81, 92 (2009). "Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is…charged against the defendant." *Id*. at 92 (first alteration in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). Likewise, a delay caused by good faith plea negotiations between the State and a defendant is a valid reason that should not be weighed against the State for constitutional speedy trial purposes. *See State v. Munoz*, 991 S.W.2d 818, 824-25 (Tex. Crim. App. 1999) (en banc); *see also United States v. Anderson*, 902 F.2d 1105, 1110 (2nd Cir. 1990) (no speedy trial violation where, among other things, "defense counsel agreed to delays and continuances for

19

purposes of plea negotiations."), *cert. denied*, 498 U.S. 867 (1990)." The remaining twenty-six days of the fourteen month delay immediately followed the filing of the Information or occurred before trial was reset to accommodate pending motions and the COVID-19 restrictions. We therefore conclude that the remaining twenty-six days of the delay are either neutral or justified as predicated on the public health emergency caused by the COVID-19 pandemic. *See Ish*, ___ Idaho at ___, 551 P.3d at 760.

Because the primary and secondary reasons are either valid or attributed to Mansfield and weigh heavily against dismissal, and because the remaining reasons for the delay do not weigh strongly in favor of either party, we conclude that the second prong of the *Barker* analysis weighs in favor of the State.

        d. The district court did not justify the delay in Mansfield's case based on an overcrowded court docket.

Mansfield next argues the district court erred by reasoning that the delays in his case were justified "by the courts' efforts to work through the backlog of cases caused by the pandemic shutdowns." This argument is identical to the one he raised under the statutory right to a speedy trial, including the same citation to *State v. Clark*, 135 Idaho 255, 261, 16 P.3d 931, 937 (2000). We rejected this argument in our statutory analysis because an overcrowded court docket was not the reason for the delay—the reasons for the delay were the trial prohibitions in response to this Court's emergency orders and pandemic-related considerations, combined with Mansfield's pending motions. For the same reasons, we reject this argument here in the constitutional analysis.

        3. *Whether the defendant asserted his right to a speedy trial*

Mansfield contends that the third factor of the *Barker* analysis, whether the defendant asserted his right to a speedy trial, should not be weighed against him. We defer to the factual finding of the district court. The district court noted that the *Barker* factors included a consideration of the defendant's assertion of his right and found that Mansfield had not asserted his right until he filed the motion to dismiss: "[A]gain, I told you I don't recall getting that in writing or on the record in this court, that 'I want my speedy trial and I want it now.' " Mansfield acknowledges that his motion to dismiss was a late assertion of his right but takes issue with the following statements made by the district court regarding his assertion of his speedy trial right: "You have to say it at the beginning or somewhere along the way that your speedy trial right's been violated. You can't just sit with it in your back pocket and do nothing with it." He contends that these statements

20

indicate that the district court erroneously applied the "demand-waiver" doctrine rejected by the United States Supreme Court in *Barker*, 407 U.S. at 527-30. We disagree.

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532. The timing of the defendant's assertion may also factor into the analysis of whether he was deprived of a speedy trial. "Whether and how a defendant asserts his right is closely related to the other factors[.]" *Id*. at 531. Accordingly, a defendant's acquiescence to long delays in his case weighs against dismissal. *See State v. Lankford* 172 Idaho 548, 563-64, 535 P.3d 172, 187-88 (2023).

Contrary to Mansfield's contention, the conclusion that a defendant's acquiescence to long delays, or that a late assertion of the speedy trial weighs against dismissal, is not a violation of the principles laid out in *Barker* with respect to the United States Supreme Court's rejection of the demand-waiver doctrine. "The demand-waiver doctrine provides that a defendant waives any consideration of his right to speedy trial for any period prior to which he has not demanded a trial." *Barker*, 407 U.S. at 525. The United States Supreme Court rejected this rule as too rigid and held that a defendant does not lose his right to a speedy trial simply by failing to demand a trial early and often. *Id*. at 527-28. However, the Supreme Court also made clear that whether (and how) the defendant asserts his right is still a factor in determining whether the defendant's right to a speedy trial was violated:

> This does not mean . . . that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.

*Id*. at 528-29. Accordingly, the lateness of a defendant's assertion of his right, his acquiescence to those delays, or his failure to object to long delays, may weigh against dismissal, and a court may

ultimately decide to deny a motion to dismiss on speedy trial grounds—so long as the court also considers the other *Barker* factors and ultimately concludes that the combined factors weigh against dismissal.

Mansfield did not object to any of the delays in his case at any point prior to his February 6, 2022, *pro se* letter to the district court requesting dismissal of his case on speedy trial grounds. At that time, trial had already been scheduled for March 1, 2022, without any objection from Mansfield, and Mansfield was engaged in plea negotiations with the State. Mansfield's counsel did not file a motion to dismiss on speedy trial grounds until after the March 1, 2022, trial date had been vacated and the parties had entered a plea agreement. When a criminal defendant is represented by counsel, a *pro se* assertion of a speedy trial violation carries less weight than does a motion made by counsel. *United States v. Battis*, 589 F.3d 673, 681 (3d Cir. 2009). This is because a formal motion provides notice to the state of a possible constitutional violation and "gives the state an opportunity to remedy that situation." *Hakeem v. Beyer*, 990 F.2d 750, 765 (3rd Cir. 1993).

In addition, the manner in which Mansfield asserted his right, whether via his *pro se* letters or his formal motion to dismiss filed by his counsel, carries less weight because he never demanded a prompt trial. "A motion for dismissal is not evidence that the defendant wants to be tried promptly." *United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007) (citing *Barker*, 407 U.S. at 534–35 ("More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial . . . . Instead, the record strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried.")). Similarly, the manner in which Mansfield asserted his right to a speedy trial does not indicate that he wished to be tried. Mansfield acquiesced to the delays in his case by failing to request that his trial be scheduled sooner or objecting to any continuances. The motion to dismiss was Mansfield's first assertion of his right to a speedy trial. Accordingly, we find no error in the district court's conclusion that Mansfield's assertion was late.

As a final argument on this third *Barker* factor, Mansfield contends that his failure to raise a speedy trial issue earlier was not a knowing strategy, as evidenced by his trial counsel's delay in filing his motions, including his motion to dismiss on speedy trial grounds. He argues that it was his trial counsel who acquiesced to the long delays in his case, not him, and the late assertion of his right to a speedy trial should therefore not be weighed against him. However, the United States

22

Supreme Court has rejected this same argument in *Vermont v. Brillon*, 556 U.S. 81, 92 (2009) (delays caused by the appointment of new trial counsel, at defendant's request, do not weigh against the State, and defense-caused delays weigh against the defendant).

In sum, because our review of the record confirms that the district court properly found that Mansfield had not asserted his right to a speedy trial at any time during his case prior to his late-filed motion to dismiss, we conclude that the third prong of *Barker* weighs in favor of the State.

4. *The prejudice to the defendant*

Mansfield contends that the district court erred by failing to fully analyze the final *Barker* factor, the extent to which he was prejudiced by the delays in his case. The United States Supreme Court has identified three interests that the right to a speedy trial is designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. The last interest is the most serious, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. Mansfield argues that the unique circumstances of his case indicate that the district court erred in its conclusion that he was not prejudiced under the first interest. He also argues that the district court erred by failing to address the second and third types of prejudice entirely.

In ruling on Mansfield's motion to dismiss on speedy trial grounds, the district court did not directly address the prejudice factor; however, it did so indirectly. After discussing the Sixth Amendment right to a speedy trial, the district court explained that the right exists "to minimize the possibility of a lengthy incarceration prior to trial, to reduce impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life cause by arrest in the presence of unresolved charges." Thus, the district court restated the interests discussed above and identified in *Barker*, 407 U.S. at 532. The district court went on to find that, "Mansfield was at the same time being held no bond on probation violations. So he was going to be [incarcerated] one way or another for a time." The district court had previously explained, at the March 28, 2022, hearing on Mansfield's change of plea, that Mansfield was not prejudiced because he was receiving credit for time served in jail while awaiting this trial and was "on [his] way to the penitentiary" on his other sentences. Thus, the district court implied that the interests identified above were not of significance in this case.

23

Mansfield did not argue below that he was suffering any specific type of prejudice as a result of the delay in his case. On appeal, Mansfield first argues that he was entitled to a presumption of prejudice regarding his third interest, the possibility his defense was impaired. In support of this argument, he cites to *Doggett v. United States*, 505 U.S. 647, 655 (1992), for the proposition that his fourteen-month delay alone is enough to presume that his defense was impaired, even without any additional facts demonstrating how the passage of time impacted the availability of witnesses or the production of evidence. Mansfield's reliance on *Doggett* is misplaced, however, because that case was resolved due to government negligence in bringing the defendant to trial rather than prejudice to the defendant.

In *Doggett*, the United States Supreme Court held that Doggett's right to a speedy trial was violated after an eight-and-one-half year delay between his indictment and his arrest. *Id.* at *651*. Doggett was indicted on federal drug charges in 1980, but he left the country before federal agents secured his arrest. *Id.* at 648-49. Federal agents did not make any attempt to locate him once they had realized he had fled the country. *Id.* Doggett re-entered the country in 1982; however, federal agents assumed he was still abroad and "made no effort to find out for sure or track Doggett down, either abroad or in the United States." *Id.* at 650. For six years, Doggett resided in the United States, working "as a computer operations manager, liv[ing] openly under his own name, and stay[ing] within the law[,]" until "the Marshal's Service ran a simple credit check on several thousand people subject to outstanding arrest warrants, and within minutes, found out where Doggett lived and worked." *Id.* at 649-50. Thus, Doggett was arrested eight-and-one-half years after his indictment. *Id.* at 650.

On appeal, the United States Supreme Court referred to the government's efforts to find Doggett and bring him to trial as lethargic and negligent. *Id.* at 653. Thus, the reason for the delay, especially in light of the excessive length of the delay, weighed heavily against the government and in favor of dismissal. *Id.* The Supreme Court recognized that on the prejudice prong, Doggett "ha[d] not shown precisely how he was prejudiced by the delay between his indictment and his trial." *Id.* at 654. However, the Supreme Court concluded this factor carried less weight under the specific circumstances of the case, particularly because the excessively long delay of eight-and-a-half years and the government's negligence in bringing Doggett to trial were significant enough to entitle him to relief. *Id.* at 657-58. Accordingly, *Doggett* was decided on the first two *Barker* factors (length of delay and reason for the delay) and not the prejudice prong.

24

The facts of this case are notably distinguishable from those in *Doggett*. A fourteen- month delay is substantially less than an eight-and-one-half-year delay. More importantly, and as we have explained above, the delay in Mansfield's case was not attributed to the State at all; the delays were either valid, neutral, or weighed against Mansfield. Accordingly, Mansfield's reliance on *Doggett* is misplaced.

Next, Mansfield argues that he experienced anxiety and stress as a result of the delays in his case, a type of prejudice the district court failed to consider. Mansfield argues that although he was serving a sentence in another case at the time this case was pending, he was prejudiced because he experienced "emotional stress that can be presumed to result in the ordinary person from uncertainties . . . of receiving a sentence longer than, or consecutive to, the one he presently serving—uncertainties that a prompt trial resolves." (Alteration in original). (*Quoting Strunk v. United States*, 412 U.S. 434, 439 (1973)). However, Mansfield's reliance on *Strunk* is misplaced.

Contrary to Mansfield's contention, *Strunk* does not stand for the proposition that this second type of prejudice is sufficient to tip the fourth *Barker* prong in favor of dismissal in and of itself. Instead, *Strunk* provides that, when a defendant's right to a speedy trial has been violated, the only possible remedy is dismissal of the charges; a reduction of sentence will not suffice, precisely because the second type of prejudice—anxiety and stress caused by the uncertainties associated with resolution of the charges and possible sentencing—is always present in a delay. *Strunk*, 412 U.S. at 439–40. In *Strunk*, the government conceded that the defendant's right to a speedy trial had been violated. *Id*. at 440. Thus, the only issue before the United States Supreme Court was the matter of the remedy; the Supreme Court did not conduct a *Barker* factor analysis. In contrast, in this case, neither the State nor the district court has agreed with Mansfield that his right to a speedy trial was violated, and on appeal, this Court *is* tasked with conducting a *Barker* factor analysis. Thus, Mansfield's reliance on *Strunk* is misplaced. Moreover, we have previously held that a defendant's generalized anxiety regarding the outcome of his case is insufficient by itself to support a speedy trial violation in *State v. Young*, 136 Idaho 113, 118, 29 P.3d 949, 954 (2001). We reaffirm the same conclusion here.

As a final argument on the issue of prejudice, Mansfield argues that the district court failed to appreciate the full extent of his pretrial incarceration and the prejudice he experienced due to the delays in this case after his Caribou County cases had resolved. Mansfield admits that he would have been incarcerated regardless of this case due to his other charges and convictions. However,

25

he asserts that those charges resolved earlier than did this case; accordingly, he would have been serving his time in prison, with access to rehabilitative services, rather than wasting time in the Bannock County jail, had this case resolved sooner. Mansfield's argument hinges solely on our acceptance of his premise that prison is better than jail and his time would have been better spent there. We are not convinced. While serving time in jail instead of prison may very well be anxiety-inducing, that type of prejudice is common to the incarcerated jail population at large and does not constitute the particularized prejudice that *Barker* contemplates. *See State v. Ish*, ___ Idaho, ___, ___, 551 P.3d 746, 761–62 (2024) (holding that Ish's pretrial incarceration and associated anxiety and concern did not constitute undue prejudice that weighed in favor of dismissal).

In sum, Mansfield has failed to demonstrate that he was prejudiced in a particularized manner sufficient to weigh the fourth *Barker* factor in favor of dismissal. Mansfield did not allege that the delay caused any specific impairment to his defense, and Mansfield did not challenge the district court's factual finding that he would have been incarcerated, either in jail or in prison, for the duration of the delay regardless of any events occurring in this case. Therefore, we conclude that the fourth *Barker* factor weighs in favor of the state.

5. *Conclusion*

In balancing all four Barker factors, we conclude that Mansfield's constitutional rights to a speedy trial were not violated. Although the length of delay at fourteen months was presumptively prejudicial, the remaining factors weigh against dismissal. The most significant reason for the delay, accounting for 241 days, or over seven months, was attributed to the emergency orders prohibiting jury trials in response to the COVID-19 pandemic, which is justified. The other delays were either attributed to Mansfield, were justified as predicated on pandemic-related concerns in rescheduling cancelled trials, or were neutral. Thus, the second *Barker* factor weighs heavily against dismissal. Likewise, the third factor, assertion of the right, weighs against dismissal given its lateness and Mansfield's acquiescence to each scheduled trial date. Finally, any prejudice Mansfield experienced, including pretrial anxiety, is insufficient to support a speedy trial violation.

Therefore, we conclude that Mansfield's speedy trial rights were not violated. Accordingly, the district court did not err in denying Mansfield's motion to dismiss.

### IV. CONCLUSION

For the reasons explained above, the judgment of conviction is affirmed.

26

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.